FRANCES MAE LONG v. FRANK C. LONG ET AL.

No. 7209. Decided March 15, 1939.
Rehearing overruled April 19, 1939.
(125 S. W., 2d Series, 1034.)

*Thompson, Knight, Baker & Harris,* of Dallas, for plaintiff in error.

The Court of Civil Appeals erred in holding that the record in this case contained no evidence in support of the finding and the judgment based thereon in the trial court to the effect that execution of the will in question by Mrs. Long was procured by undue influence exerted over her by Frank Long. Weston v. Teufel, 213 Ill. 291, 72 N. E. 908; Soureal v. Weisner, 321 Mo. 920, 13 S. W. (2d) 548; Moos v. First State Bank, 60 S. W. (2d) 889; Schouler on Willis (6th Ed), 355, 361.

*Storey, Sanders, Sherill & Armstrong* and *W. F. Bane,* all of Dallas, and *Fred Minor,* of Denton, for defendants in error.

Findings of fact made by the Court of Civil Appeals to the effect that the evidence in the record did not show any undue influence upon the testatrix at the time she executed the will are binding upon contestant and the Supreme Court. Wilson v. Paulus, 15 S. W. (2d) 571; Holmes v. Houston, (error dismissed) 241 S. W. 1039, 262 S. W. 849; Joske v. Irvine, 91 Texas 574, 44 S. W. 1059; Dannenbauer v. Messeser's Estate, 62 S. W. (2d) 235; Koger v. Coker, 111 S. W. (2d) 357.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This cause originated in the County Court of Dallas County, Texas, sitting in matters probate. Frank O. Long et al. made application to probate a certain instrument as the last will and testament of Mrs. Martha Long, deceased. Such probate was resisted by Frances Mae Long, a granddaughter of the deceased. The will was admitted to probate in the county court. Miss Long appealed to the district court, where trial de novo was had. The trial in the district court, with the aid of a jury, resulted in a verdict and judgment for the contestant, Miss Long. Frank O. Long et al. appealed to the Court of Civil Appeals at Dallas, but the case was transferred to the Court of Civil Appeals at El Paso on the equalization of the dockets of such courts. On final hearing in the El Paso Court of Civil Appeals, the judgment of the district court was reversed, and judgment rendered for Frank O. Long et al. In other words judgment was rendered admitting the will to probate. 98 S. W. (2d) 236. The case is before the Supreme Court on writ of error granted on application of the contestant, Miss Long.

The record shows that probate of this will was resisted by Miss Long on two grounds: First, lack of testamentary capacity; and, second, undue influence alleged to have been exercised over the testatrix by Frank O. Long. The jury found that Mrs. Long possessed testamentary capacity at the time

the will was signed, but that the will was the product of undue influence.

■ It is impossible to lay down any hard and fast rule, or rules, which will accurately govern the question as to whether a given record contains affirmative probative evidence of undue influence. All that we can do is to announce certain general rules of law, and then in this case, as in all cases, apply such rules to the facts in the record. Law is not an exact mathematical science. No two cases are alike. Each case must stand on its own bottom as to the legal sufficiency of the facts proven. In spite of this, there are certain well-known rules of law which govern in cases of undue influence. We deem it expedient to here announce those which we think control this case.

1. It is not possible to frame a definition of undue influence which embraces all forms and phases of the term. Every case is different from every other case, and must depend largely on its own facts and circumstances. Generally speaking, undue influence is such influence or dominion as exercised at the time, under the facts and circumstances of the case, which destroys the free agency of the testator, and substitutes in the place thereof the will of another. Undue influence has also been defined as that dominion acquired by one person over the mind of another which prevents the latter from exercising his discretion, and which destroys his free agency. Also, undue influence has been defined as "that which compels the testator to do that which is against his will from fear, the desire of peace, or some feeling which he is unable to resist." 42 Tex. Jur., p. 792, sec. 2, and authorities there cited.

2. It cannot be said that every influence exerted by one person over the mind of another is undue. The influence is not undue unless the free agency of the testator has been destroyed, and a will produced that such testator did not desire to make. 42 Tex. Jur., p. 793, sec. 4.

■ 3. In will cases, after mental capacity has been shown, the burden of proving undue influence is on the party contesting the probate of the will. Hart. v. Hart (Civ. App.), 110 S. W. (2d) 91.

4. It is rarely possible to prove undue influence by what is generally known as direct testimony. Undue influence is usually a subtle thing, and by its very nature it usually involves an extended course of dealings and circumstances. Usually a person charging undue influence must substantiate such charges by circumstances extending over a considerable length of time. It is therefore the settled rule that undue influence

can be established by what is known as circumstantial, as well as direct, evidence. Besteiro v. Besteiro (Com. App.), 65 S. W. (2d) 759; Bergstedt v. Bender (Com. App.), 222 S. W. 547.

■ 5. Undue influence and mental incapacity are two distinct grounds for avoiding a will. Undue influence in its essential elements has no real relation to mental incapacity. Mental incapacity implies the lack of intelligent mental power; while undue influence implies within itself the existence of a mind of sufficient mental capacity to make a will, if not hindered by the dominant or overriding influence of another in such a way as to make the instrument speak the will of the person exercising undue influence, and not that of the testator. Scott v. Townsend, 106 Texas 322, 166 S. W. 1138.

■ 6. In spite of the rule just announced, weakness of mind and body, whether produced by infirmities of age or by disease or otherwise, may be considered as a material circumstance in determining whether or not a person was in a condition to be susceptible to undue influence. 42 Tex. Jur., p. 796.

■ 7. A person of sufficient mental capacity to make a will has a right to devise his property as he may see fit, so long as he transgresses no law. Also, a person in making a will rests under no legal obligation to devise his property according to the laws of descent and distribution, or according to any moral law, and the mere fact that a testator has ignored such laws is no ground for setting aside his will. In spite of this, however, the fact that a testator has left a will that is unnatural in its terms, and makes a difference between those who, according to natural law, ought to stand equal as to his bounty, may be considered as a circumstance along with other circumstances in determining whether or not the will was a product of undue influence.

■ Measured by the above rules, we come now to consider whether this record is entirely bare of facts which would justify the rejection of this will as a product of undue influence exercised over the mind of the testatrix by Frank O. Long. Bear in mind that the jury has found such undue influence. We must therefore indulge the presumption that the jury believed and accepted all probative evidence tending to sustain its verdict.

The record before us show that Mrs. Long signed this will on December 12, 1927, and that she died on December 3, 1932, about five years thereafter. The record also shows that at the time this will was signed Mrs. Long was about seventy-seven years of age, and that she was extremely fragile, and spent a

great deal of her time in bed. At the time, she was afflicted with several diseases which caused her great worry, inconvenience, and pain. At the very time the will was signed, Mrs. Long's mental vigor was greatly weakened and impaired by age, sickness, and grief. Such grief was caused by the then very recent death of a daughter greatly loved and cherished by the testatrix.

We do not say that the evidence shows, as a matter of law, that this will is an unnatural one. On the other hand, Mrs. Long did not leave her property according to the laws of descent and distribution, and Frank O. Long received under its terms more than he would have received according to such laws. Without going into details, we will say that there is evidence in this record which would justify the jury in finding that this will is unnatural in its terms, and makes a difference between those who, according to natural law, would stand equal as to Mrs. Long's bounty. Of course, this alone is no ground for rejecting a will. It is a mere circumstance to be considered along with other circumstances.

■ We think the evidence in this record is sufficient to show that Frank O. Long looked after and attended to nearly all of his mother's business affairs, and had in his possession a large part of her liquid assets. In other words, we think there is evidence in this record sufficient to show that Frank O. Long generally looked after and supervised most of the business affairs and business interests of his mother, the testatrix, and that Mrs. Long had few business dealings or ventures without consultation with Frank O. Long.

The evidence further shows that Frank O. Long employed the attorney who wrote this will, and paid him therefor; that Frank O. Long went to the office of such attorney and gave him instructions as to how to write the will, and what disposition such will should make of the testatrix's property; that the attorney wrote the will without any previous interview or consultation with Mrs. Long in regard thereto; that every item and bequest in such will was written therein by the attorney at the request, suggestion, and instruction of Frank O. Long; that before the will was carried to Mrs. Long to be signed, the draft made by the attorney was changed one or more times at Frank O. Long's direction; that after the attorney had finally finished the will as instructed by, and to the satisfaction of Frank O. Long, he (Frank O. Long) went to the office of the attorney and conveyed him to Mrs. Long's home for her to execute the same; and that the will was executed at such time, and under such circumstances. The attorney who wrote the

will under the above circumstances testified that he read the will over to Mrs. Long, except perhaps property descriptions, and explained it to her, and that she signed it without making any objections thereto. We are justified further, from the record before us, in saying that Mrs. Long signed this will just as it was written, without asking any questions. In other words, from the statement of facts before us, Frank O. Long carried this attorney to his mother after instructing the attorney how to write the will, and the attorney simply explained the will to Mrs. Long, and she signed it, so far as we know, without any material comment. Mrs. Long never consulted the attorney who wrote the will before the will was written, and never gave any instructions as to how it should be written, unless such instructions were given to Frank O. Long, and given by him to the attorney.

Boiled down, we have this case before us; Mrs. Long at the time this will was executed was in a very weakened condition. Frank O. Long mainly looked after her business affairs. Frank O. Long went to an attorney and had his mother's will written. He gave the attorney full instructions as to how to write such will. According to natural law, the will is unfair to this contestant, and gives Frank O. Long more than he would have gotten under the laws of descent and distribution. Frank O. Long paid the attorney for writing the will; he carried him to the home of the testatrix; he carried him back after the will was signed; he took charge of the will after it was signed; the testatrix signed the thing that was presented to her, without question or suggestion; Frank O. Long had every opportunity to unduly influence his mother, as he was constantly with her, and constantly attended to her business; and the will is not a natural one according to moral law. At least, the jury could have so found. We think that the above facts constitute some evidence of undue influence. In this regard, we think that Frank O. Long's actions with reference to having this will drawn can be considered with tremendous force against him, and against the will.

■ Further discussing the question of undue influence, we think there is considerable evidence in this record showing, or tending to show, that Mrs. Long did not herself fully under-stand this will, and that she could not have understood it with the explanation given her at the time it was signed. As one instance justifying this conclusion, we call attention to item 2 of the will. By this item, Frances Mae Long, this contestant, was bequeathed an undivided 1/6th interest "in what may remain unsold at the date of my death of a certain 90 acre

tract of land," etc., "together with 1/6th interest in the proceeds of the sale of the said 90 acre tract or any part thereof." . If we understand this record, Mrs. Long had only a life estate in the above 90 acre tract and its proceeds, and this gift to this contestant amounted to nothing. Furthermore, if we understand this record, there is no proof contained therein that this matter was explained to Mrs. Long at the time the will was signed. According to the testimony of the attorney who drew this will, this provision was written therein at the direction of Frank O. Long. This is so because such attorney testified that he drew the will according to instructions given him by Frank O. Long. There is evidence in this record which would justify the jury in believing that Frank O. Long had knowledge of the facts above detailed, with reference to Mrs. Long's ownership of this property. Of course, we do not mean to say that the mere fact that Mrs. Long made a bequest to this contestant that accomplished nothing vitiates this will, but we think it was a circumstance to be considered by the jury along with other circumstances in arriving at the ultimate question to be decided.

The statement of facts is very voluminous, and contains more than five hundred pages of typewritten matter. As usual in such cases, the testimony bearing on undue influence is very extended, and embraces a course of dealings and conduct between the testatrix and Frank O. Long extending over a number of years. Manifestly, it would be impossible for us, in the space of an opinion, to recite all of this testimony. Much of it is cumulative in nature of the facts we have recited. Taking the case as a whole, we are of the opinion that this record presents a fact issue.

As already shown, the Court of Civil Appeals sustained the assignments of Frank O. Long et al. contending that this record contains no evidence to support the jury's finding of undue influence. After sustaining such assignments, the Court of Civil Appeals reversed and rendered this case. We have held that the Court of Civil Appeals committed error in its finding of no evidence, and in its rendition of this case. An examination of the brief in the Court of Civil Appeals, filed by Frank O. Long et al., discloses that Frank O. Long et al. in that court also urged assignments to the effect that the evidence in this record is insufficient to sustain the jury's verdict of undue influence. An assignment raising the question of insufficiency of evidence is one within the exclusive jurisdiction of the Court of Civil Appeals. The Court of Civil Appeals did not pass on the question of mere insufficiency. .

It is therefore ordered that the judgment of the Court of Civil Appeals, reversing the judgment of the district court and rendering judgment for Frank O. Long et al., be, and the same is hereby, reversed, and this cause is remanded to the Court of Civil Appeals with instructions to pass on the assignments of the plaintiffs raising the question of the insufficiency of the evidence. If the Court of Civil Appeals determines that the evidence is insufficient, it can reverse and remand, but it cannot reverse and render. Of course, we do not want to be understood as even suggesting to the Court of Civil Appeals what its ruling shall be on the issue of sufficiency. That question is within its exclusive jurisdiction.

Opinion delivered March 15, 1939.

Rehearing overruled April 19, 1939.