**LEEDER et al. v. LEEDER et al.**

No. 11155.

Court of Civil Appeals of Texas.
San Antonio.

April 29, 1942.

Rehearing Denied May 27, 1942.

Lee Wallace and Robert I. Wilson, both of Kerrville, and Morriss & Morriss, of San Antonio, for appellants.

Petsch & Burkett, of Kerrville, and Petsch & Usener, of Fredericksburg, for appellees.

MURRAY, Justice.

This is an appeal from a judgment of the District Court of Kerr County admitting to probate, as the last will and testament of Gustav Leeder, Sr., deceased, a certain instrument dated January 30, 1932, signed by Gustav Leeder, Sr., and witnessed by Wm. Fellbaum and Paul Flack.

Albert Leeder, Henry Leeder, August Leeder and Richard Leeder, four sons of the deceased, contested the application to probate the alleged will. Adele Leeder and Alma Leeder Schuetze, the two daughters of deceased, intervened in the case and joined Gustav Leeder, Jr., in his request that the will be probated. Rudolph Leeder, another son of deceased, did not join either the proponents nor the contestants of the will.

The hearing was had in the District Court, upon an appeal from a judgment of the County Court of Kerr County admitting the will to probate. The cause was submitted to the jury upon the following two special issues, both of which were answered by the jury as indicated below, to-wit:

"Question No. 1:

"Do you find from a preponderance of the evidence that the deceased, Gus Leeder, Sr., had testamentary capacity at the time he executed the will in controversy?

"Answer: Yes.

"Question No. 2:

"Do you find from a preponderance of the evidence that the deceased, Gus Leeder, Sr., at the time he executed the will in controversy, was caused to do so by the exercise of undue influence upon him by Gus Leeder, Jr.?

"Answer: No."

Upon these findings the trial judge entered judgment admitting the will to probate, from which judgment contestants below have prosecuted this appeal.

Appellants do not in any way attack the finding of the jury made in answer to question one, so, at the outset, we may accept as final the jury's finding that Gus Leeder, Sr., at the time he executed the will did have testamentary capacity to execute the same.

■ Appellants, by their first and eighth propositions, contend that the jury's answer to question number two is so contrary to the preponderance of the evidence as to be wrong. We overrule this contention. The burden of proof was upon appellants to establish, by a preponderance of the evidence, that the will was the result of undue influence exercised by Gus Leeder, Jr., upon his father, Gus Leeder, Sr. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Maul v. Williams, Tex.Civ.App., 88 S.W.2d 1087.

■ The undue influence which invalidates a will is that which destroys the free agency of the testator and places him in a position where he is dominated by another, and such undue influence must act directly on his mind at the very time he executes the will.

The jury found there was no undue influence exerted by Gus Leeder, Jr., in the execution of his father's will. It is true that by the terms of the will Gus Leeder, Jr., was bequeathed a much greater share of his father's estate than were his brothers and sisters, but this is explained by the fact that Gus, Jr., did not marry until he was twenty-nine years of age and stayed at home during this time and worked for his father and helped to pay off some $3,000 indebtedness against the old home. After his marriage he lived near his father, waited upon him constantly, cooking some of his meals, nursing him when he was sick, and driving him wherever he wanted to go. Gus, Jr., ultimately rented his father's place and farmed it on a basis of one-third to his father and two-thirds to himself.

Gus, Jr., was not present when his father had his will prepared. He took his father on two different occasions to see R. M. Flack, a notary public, who resided in the town of Comfort, Kendall County, Texas. Gus, Jr., thinks that is when and where his father had his will prepared, and if he is mistaken in this, then he doesn't know when nor where the will was written. R. M. Flack was deceased at the time of the trial. Gus, Jr., was present, or standing nearby, when the will was executed and witnessed by Wm. Fellbaum and Paul Flack. Gus Leeder, Sr., was seventy-eight years of age at the time he executed his will, but was not disabled at the time. He was a man who read a great deal. Could read and speak English well, and was a very intelligent man. He lived some nine years after he executed the will. He was not shut in but visited his children and friends and they visited him. Gus, Sr., was a positive character and Gus, Jr., seemed to recognize him as his superior at all times.

Appellants lay great stress upon such facts as, that there is contradiction in the evidence as to where Gus, Jr., was standing at the time the will was executed, whether he was outside of the store, or within ten feet of where it was executed; that Gus, Jr., told old man Prause that he was not treated fairly in the division of his mother's estate, but that "the next settlement would be different"; that Gus, Jr., took the will about a year and a half before his father's death and put it in a vault where he stated "he wanted them to find it"; that Gus, Sr., stated he had not made a will; that he wanted his property divided equally among his children, except that he desired Adele, the afflicted daughter who lived with him until the time of his death, to have a little more than the rest, and he was sorry he had not made a will. All such matters were circumstances and facts to be weighed by the jury and cannot be considered as establishing the existence of undue influence as a matter of law.

■ The facts here presented are somewhat similar to but not nearly as strong and convincing as the facts in Long v.

Long, 133 Tex. 96, 125 S.W.2d 1034, 1038. In that case Justice Critz, speaking for the Supreme Court, said: "Taking the case as a whole, we are of the opinion that this record presents a fact issue." The most that could be said for the appellants in the case at bar is that the record presented fact issues which the jury resolved against appellants.

Appellants contend, by their second point, that probate of the will should have been denied because there was not affirmative proof that the testator had knowledge of the contents of the will. We overrule this contention. Testator could read well. The will was plainly written. Testator was of sound mind, signed it and declared it to be his will, in the presence of the subscribing witnesses. Under such circumstances he is presumed to know its contents. Kelly v. Settegast, 68 Tex. 13, 2 S. W. 870, 872.

R. M. Flack, who undoubtedly prepared the will, and the testator, who undoubtedly had him prepare the will, are both dead. So far as the record shows, no one else was in a position to testify affirmatively that Gus Leeder, Sr., knew the contents of the will other than the subscribing witnesses, who testified that he declared it to be his will, signed it in their presence, and requested them to witness his signature. If the knowledge of the testator concerning the contents of the will could not be presumed under such circumstances, then many wills would be denied probate because no living person could testify that the testator knew the contents of his will. It is not the duty of a subscribing witness to read or explain the will to the testator. It is not necessary for the subscribing witnesses to know the contents of the will. He is simply a witness to the signature of the testator.

In Kelly v. Settegast, supra, Justice Stayton, speaking for the Supreme Court said: "If a person of sound mind, able to read and write, and in no way incapacitated to acquire knowledge of the contents of a paper, by exercising the faculties he has, signs a testamentary paper, and has it witnessed as required by the statute, then, upon proof of these facts, the will ought to be admitted to probate without further proof that the testator knew the contents of the paper, unless suspicion in some way be thrown upon it."

We hold that there was no such suspicion thrown upon the will of Gustav Leeder, Sr., as to require any further proof of his knowledge of the contents of the paper.

Appellants next complain that a number of their special requested issues were not submitted to the jury. Such issues related to evidentiary matters, were not controlling issues, and were properly refused by the trial court. Specially requested issue number one sought to inquire of the jury whether or not the testator read the will, specially requested issue number two, whether it was read to him, and specially requested issue number three, whether it was explained to him. Under the record as here presented, such issues were evidentiary issues and were properly refused by the trial court. Only controlling issues should be given. New Court Rule No. 279, Texas Rules of Civil Procedure.

Appellants' other points are without merit and are overruled.

The judgment is affirmed.