CADENA et al. v. CADENA.

No. 11970.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 21, 1949.

Rehearing Denied Oct. 19, 1949.

Harry B. Berry, San Antonio, for appellants.

Davis & King, San Antonio, for appellee.

NORVELL, Justice.

This is an appeal from a judgment rendered notwithstanding the jury's answers

to certain special issues. Frank, Richard, George and Adelina Cadena brought this suit to set aside a deed which was executed by their father, Francisco Cadena, on September 27, 1933, and conveyed to the appellee, Amado Cadena, an undivided one-third interest in and to a portion of a city lot in San Antonio, Texas, together with the improvements thereon. Twelve days after the deed was executed Francisco Cadena died.

The jury found that Francisco Cadena possessed the mental capacity to make the conveyance, but that the deed was executed as a result of undue influence brought to bear upon the said Francisco Cadena by his brother, Amado Cadena, the grantee in the said deed.

The trial court, upon motion of appellee, decided that there was no evidence to support the jury's finding of undue influence and disregarded the jury's answer to said issue and rendered judgment for appellee. Rule 301, Texas Rules Civil Procedure.

The appellants here assert that there was evidence to support the jury's finding of undue influence. The appellee, in addition to answering this contention, says, by way of an alternative counter point, that even though there may have been some evidence supporting the jury's finding, nevertheless, such evidence is insufficient in fact to support the verdict in this particular. Rule 324, T.R.C.P.

Appellants rely primarily upon the case of Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, 1035, in which Mr. Justice Critz, speaking for the Supreme Court, pointed out that it was impossible to lay down hard and fast rules applicable to cases involving undue influence, as "no two cases are alike. Each case must stand upon its own bottom as to the legal sufficiency of the facts proven." The opinion then sets forth in seven numbered paragraphs the rules generally applied in undue influence cases, which need not be repeated here. It is necessary for us to review the evidence as briefly as possible so that the applicable rules may be applied.

We have read the statement of facts in its entirety. There is little conflict of testimony and the facts for the most part are undisputed.

The property here involved was inherited by Francisco, Amado and Jesusa Cadena (brothers and sister) from their father.

Francisco and his wife, Adelina Cadena, had four children (the appellants here), Frank, born August 15, 1915, Richard, born September 23, 1917, George, born February 22, 1921, and Adelina, born January 23, 1922.

Francisco and his wife owned a home which was subject to a mortgage. On October 5, 1931, the parties were divorced; the children remained with the mother and no disposition was made of the community property. Later the mortgage holder foreclosed upon the home which was re-purchased by Adelina.

On February 24, 1932, Adelina brought suit against her former husband, and an answer for Francisco was filed by Thomas W. Menefee, a practicing attorney. This suit was dismissed after Francisco's death.

Francisco Cadena suffered from tuberculosis, and about the time of the divorce from his wife became totally incapacitated and was forced to give up his occupation as a coffee route salesman. Apparently he had no property except the equity which he and his wife had in the house where they formerly lived and his one-third undivided interest in the property here involved.

Francisco went to live with his unmarried sister, Jesusa, who resided upon the premises now in controversy. After some time his condition became worse and he moved over to his brother's house. Then a short time before his death he stayed with an aunt who lived in the country.

Twelve days before his death, Francisco was brought in from the country to his brother's house, where he met Mr. Tom Menefee, who had represented him as an attorney in the 1932 suit brought against him by his former wife. Jesusa Cadena testified that Francisco went to see Mr. Menefee before the deed was executed. Jesusa was made a party to this suit, although no relief against her was prayed for. She did, however, own an interest in the property here involved and was patently friendly with her brother Amado. The jury was not bound to accept her

testimony, but even if her statement as to how Mr. Menefee's services were obtained be disregarded, there is, nevertheless, no evidence that Menefee prepared the deed and presented it for execution at the request of grantee, Amado. Menefee was dead at the time of the trial. Amado testified that Menefee had represented him as an attorney and that he paid Menefee for drawing the deed as his brother had no money.

Amado was present in the house when the deed was signed and acknowledged. There were others also present. Two of these persons executed an affidavit relating to the Cadena family and one of them testified that at the time the deed was executed, he had a conversation with Francisco, who "talked very good—just like anybody talks"; he seemed of sound mind and knew that death was approaching. In referring to the deed, Francisco said, "This is my will, this is what I am going by."

There seems to have been some bitterness of feeling on the part of Francisco toward his divorced wife. One witness, a doctor, testified that Francisco stated that his wife and children were working against him and had "put a spell on him," and that he wanted no medical treatment as he had no desire to live. This doctor was of the opinion that Francisco was of unsound mind, but the jury found to the contrary and that finding is not questioned here. The appellants testified that their father was friendly toward them and that they visited him quite often. One of appellants testified that Francisco "was the best father there ever was. He loved his children."

The only witness who testified as to values estimated that the whole of the property was worth between $1,850.00 and $2,250.00 in 1933. If Francisco's interest had been inherited by his children under the law of descent and distribution, each child would have gotten an undivided one-twelfth interest, worth from $154.00 to $187.00.

Undoubtedly Francisco was in a weakened physical and mental condition at the time of the execution of the deed. His death, twelve days afterwards, points rather conclusively to this fact. Further, the evidence shows that Amado had the opportunity to influence his brother's action. But the evidence seemingly goes no further.

Other than a surmise, which might be drawn from the fact that Amado paid Mr. Menefee, there is no evidence that the deed was drawn at Amado's request and under his instructions. Amado testified that he handled Francisco's business for him but, when his testimony is viewed as a whole, it is apparent that the witness meant that he attended to his brother's wants. Francisco had no business, and it can hardly be said that the evidence shows that Amado dominated his brother in making business or financial decisions.

■ Under the peculiar facts of this case, we do not regard the deed as effecting an unnatural disposition of the property. Appellants do not dispute the fact that Amado and Jesusa took care of their brother for two years and paid the expenses incident thereto. It is not unnatural to suppose that Francisco felt some moral obligation to reimburse his brother for money expended in his behalf. The unmarried sister, owning an undivided interest, lived upon the property. It is reasonable to suppose that she would continue to live there if Amado owned the other two-thirds interest. On the other hand, should Francisco's children receive his undivided interest, the property would have to be sold before they could realize any benefit therefrom, and the adoption of this course in 1933 may well have resulted in more damage to Amado and Jesusa than benefit to his children. Undivided interests in real property owned by minors are difficult to handle, and no matter how much he loved his children, Francisco was not in a position to do them much good in a material way, and then only at the cost of injuring his brother and sister who had cared for and supported him during his long illness. Under these circumstances, we do not regard Francisco's disposition of his undivided interest in the property as being unnatural. At least, it is as reasonable to suppose that the disposition of the property made by Francisco was influenced by the considerations above set out, as it is to conclude that the property

was conveyed to Amado because of undue influence exercised over the mind and will of Francisco.

 In the case of Shofner v. Shofner, Tex.Civ.App., 105 S.W.2d 418, 420, wr. ref., Mr. Justice Murray, speaking for this Court, pointed out that the mere showing of an opportunity to exert undue influence will not support a finding that undue influence was actually exercised. The evidence must go further, "the undue influence must be shown, either by direct testimony or circumstantial evidence, to have operated upon the mind of the testator so strongly that he was prevented from exercising his own will, but rather compelled to accept the will of another. In other words, it must be shown that he in effect said to himself, 'It is not my will, but I must do it.' " See also Jung v. Harris, Tex.Civ.App., 281 S.W. 335; Koger v. Coker, Tex.Civ.App., 111 S.W.2d 357; Walter v. Goeth, Tex.Civ. App., 177 S.W.2d 794; Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511; Bass v. Bass, Tex.Civ.App., 207 S.W.2d 103; Pullen v. Russ, Tex.Civ.App., 209 S.W.2d 630; Lynn v. Jackson, Tex.Civ.App., 216 S.W.2d 649.

We are of the opinion that the authorities cited control the disposition of this case and demonstrate that the trial court's disposition of the case was correct. This view in no way conflicts with the holdings of the Supreme Court in Long v. Long, 133 Tex. 96, 125 S.W.2d 1034.

In the alternative, we sustain appellee's counter-proposition wherein it is asserted that the evidence, as a matter of fact, is insufficient to support the jury's finding of undue influence.

The trial court, upon proper motion, likewise disregarded the jury's answer to an issue relating to limitation. In so doing, the court did not err. The holdings above set out in effect control the decision with reference to this matter. A cause of action to set aside a deed is vested in the grantor, who in this case was Francisco Cadena. This suit was not filed until 1942, and in order to escape the bar of the statute of limitation it was necessary for the heirs to show that the statute had not commenced

to run at the time of the ancestor's death. Article 5544. Vernon's Ann.Civ.Stats. There is authority for the proposition that in actions based upon duress or undue influence, "the operation of the statute of limitations is tolled or suspended and the cause of action is deemed not to accrue until such time as duress or undue influence ceases to exist. Upon the removal of the duress or undue influence the statute begins to run." 34 Am.Jur. 193, § 236. But to avail themselves of the benefit of this rule, appellants would have to show that Francisco Cadena executed the deed as a result of undue influence, and that said influence continued to dominate his mind until he died. Appellants failed to make this showing.

All of appellants' points are overruled and the judgment appealed from is affirmed.

SMITH, C. J., absent.