Charles H. BOUNDS, Appellant,

v.

Emma W. BOUNDS, Appellee.

No. 7397.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 28, 1964.

Rehearing Denied Oct. 26, 1964.

Bowlen Bond, Teague, Willard G. Street, Jr., Littlefield, for appellant.

Mays & Jacobs, Corsicana, Arthur P. Duggan, Littlefield, for appellee.

DENTON, Chief Justice.

This is a suit filed by Emma W. Bounds, a feme sole, against her son Charles H. Bounds to cancel a warranty deed executed by Mrs. Bounds conveying 354.272 acres of land in Lamb and Bailey counties, Texas, to her son on September 2, 1960. Upon a jury verdict the trial court entered judgment cancelling and setting aside the deed in question.

In response to special issues submitted, the jury found the deed in question was procured from Emma W. Bounds as the result of undue influence exercised by Charles H. Bounds upon Mrs. Bounds; that Mrs. Bounds was able to understand the nature and effect of the deed when she executed it; that at the time of the transaction in question Charles Bounds stood in a fiduciary relationship toward Mrs. Bounds; that Charles Bounds took unfair advantage of that fiduciary relationship; that he represented to his mother that her other children had abandoned her; that such representation was false, that such representation

caused resentment on the part of Mrs. Bounds toward her other children; that she believed the representation; and that Emma Bounds would not have executed the deed except for her belief that her children, other than Charles H. Bounds, had abandoned her. The jury further found appellant Charles H. Bounds represented to appellee the other children filed a guardianship proceeding for the purpose of securing all of Mrs. Bounds' property for themselves; that such representation was false; that it caused resentment on the part of Emma Bounds toward her other children; that Mrs. Bounds believed such representation; and Emma Bounds would not have executed the deed except for the belief her children, other than Charles Bounds, sought to secure all her property by filing a guardianship proceeding.

The two labors containing 354.272 acres located in Lamb and Bailey counties were the separate property of Emma Bounds. She had held title to the property since prior to 1931. At the time the deed in question was executed she was 84 years of age and was 87 at the time of this trial. Of the 8 children born to Mrs. Bounds 3 died prior to reaching adulthood. In accordance with the express wishes of John T. Bounds, Emma Bounds' deceased husband and the father of all of her children, Emma Bounds deeded the 155¾ acres "home place" in Freestone County, Texas, to Charles Bounds on July 30, 1956. Mrs. Bounds continued to reside at the home place with Charles and his wife, Helen Bounds, until April of 1962. It is undisputed appellant and his wife properly cared and provided for his mother during this long period. There was evidence the home place was given to appellant in consideration of his agreeing to care for his mother during her lifetime. The deed to the Freestone County property is not involved in this case. It is undisputed that the Bounds family was a close-knit, congenial one until Mrs. Bounds became seriously ill in June of 1960. During the two or three months' illness she remained in the home of appellant and was attended by all

of her children from time to time. Dr. Norris Buckmeyer was her attending physician. The doctor testified, "Mrs. Bounds was in severe congestive heart failure, and she seemed to be unresponsive to the medicines we usually use for this condition." He testified she was suffering from "generalized arteriosclerosis" and "cerebral arteriosclerosis". Dr. Buckmeyer testified Mrs. Bounds' condition brought on a symptom of "memory disturbance in that these people are aware of what they are doing most of the time, but they forget very easily." This same doctor expressed the opinion that one in this mental condition could be easily influenced by one in whom she had confidence. During this period of her illness, on August 20, 1960, Mrs. Bounds executed a power of attorney to her daughter, Emma B. Stoddard. This power of attorney was revoked by her five days later. On August 29 of that same year all of Mrs. Bounds' children except the appellant filed an application for appointment of a guardian of Mrs. Bounds' person and estate. On September 19 this guardianship proceeding was dismissed on motion of the applicants. It was during this interval, on September 2, 1960, that Mrs. Bounds executed the deed in controversy. The deed was recorded in Lamb County on September 20 and in Bailey County on September 21 of 1960. Appellee filed this suit to set aside the deed of September 2, 1960, on the grounds that when she executed the deed she did not have the mental capacity to execute it; the execution of the deed was induced by the undue influence of Charles H. Bounds; and fraud or misrepresentations practiced upon her by Charles H. Bounds. The jury found Mrs. Bounds possessed the mental capacity to execute the deed and this question is not before us. Based on the jury findings previously set out the trial court rendered judgment cancelling the deed.

We shall first considered appellant's last point of error as we agree with appellant it is "the most serious point of error in this case." By this point appellant contends the jury verdict and the court's judgment is

not supported by any evidence of undue influence, and that the verdict is against the great weight and preponderance of the evidence. In as much as the point presents both a "no evidence" and an "insufficient evidence" point it is multifarious, however, under a liberal construction of the rules, we will discuss and dispose of the point.

In reviewing the question of "no evidence" this Court is required to review the evidence and all reasonable deductions and inferences therefrom giving it its most favorable meaning to determine if it will support the jury finding of undue influence and fraud. Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208; Truelove v. Truelove (Tex.Civ.App.), 266 S.W.2d 491 (Writ Refused); Self v. Thornton (Tex.Civ.App.), 343 S.W.2d 485 (NRE). When the issue of undue influence has been properly raised, evidence of infirmity of mind produced by age, ill health or other reasons, circumstances attending the execution of the instrument, opportunity for the exertion of influence that would destroy the exercise of free agency, unnatural or unjust disposition of property, and other facts which may shed light upon the question will be reviewed by the courts in determining whether or not undue influence did exist. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Truelove v. Truelove, supra. It has been held that rules for determining the existence of undue influence apply substantially alike to wills, deeds, and other instruments. Guedry v. Jordan (Tex.Civ.App.), 268 S.W. 191; Self v. Thornton, supra.

The events leading up to the execution of the deed in question apparently began on August 20 of 1960 when Emma Bounds executed the power of attorney to her daughter, Emma B. Stoddard. Shortly thereafter appellant became aware of this transaction. This transaction, coupled with the daughters' decision to place their mother in a rest home, was resented by appellant, and on August 25 he ordered his sisters out of his home, "and never come back." Several witnesses testified to the strong language used by appellant in ordering his sisters to leave the premises. On the day Mrs. Bounds' daughters left appellant's home the power of attorney to her daughter was revoked by Mrs. Bounds. There is evidence that the revocation was initiated by appellant. Four days later, on August 29, the guardianship proceedings were filed by Mrs. Bounds' daughters. When she was served in connection with the guardianship proceedings, Betty Mead testified, "Charles. [appellant] brought in a paper and carried it into his mother, and he told her that they were trying to prove that her—her daughters were trying to prove that she was crazy. And he told her that the daughters didn't love her and they were just trying to get her money, and trying to put her in this old folks home where they could get her property." By deposition, Mrs. Bounds corroborated this testimony. She testified she had confidence in her son and believed him when he told her her daughters had abandoned her, and that they sought to get her property. She further testified in connection with the deed, "I would not have signed it if I had but—if I had known that he was the cause of them not coming back to see me."

Seven days after the guardianship application was filed the deed in question was executed by Mrs. Bounds to her son. Both by deposition taken on May 25, 1962, and as a witness at the trial, Emma Bounds testified she could not remember executing the deed in question. We think it is significant that the daughters of Mrs. Bounds did not see or visit her from August 25, 1960, until April of 1962 when appellant took Mrs. Bounds to the funeral of one of her sons-in-law. This fact tends to support the daughters' contention they were ordered out of appellant's home. It was at this funeral that Mrs. Bounds was told her daughters had not come to see her for the reason they had been ordered off of appellant's premises. Appellant admitted he had arranged for an attorney to prepare the deed, but could not recall whether he had paid the attorney.

Although some jurisdictions consider fraud in the inducement of a disposi-

tive instrument as a distinctive ground for invalidating it, wholly separate and apart from undue influence, the courts of this State have treated the two as one. Undue influence is itself a species of legal fraud. Bradshaw v. Seaton, 60 Tex.Civ.App. 278, 128 S.W. 943 (Writ Refused); Curry v. Curry, supra; Rothermel v. Duncan, Tex., 369 S.W.2d 917. It is also well settled the exertion of undue influence is a subtle thing and by its very nature it usually involves an extended course of dealings and circumstances. Undue influence can be established by what is known as circumstantial as well as direct evidence. Besteiro v. Besteiro (Tex.Com.App.), 65 S.W.2d 759; Long v. Long, supra. Generally the establishment of the evidence of undue influence is based on a number of essential events and circumstances. Long v. Long, supra. These elements have been held to include: The nature and type of relationship existing between the grantor, the contestants, and the party accused of exerting such influence; the opportunities existing for the exertion of the type of influence or deception employed; the circumstances surrounding the drafting and execution of the instrument; the existence of a fraudulent motive; and whether there had been a habitual subjection of the grantor to the control of another. Rothermel v. Duncan, supra. Where there is competent evidence of the existence and exercise of such influence, the state of the grantor's mind at the time of the instrument's execution must be examined. This inquiry is based on the grantor's mental and physical incapacities to resist or the susceptibility of the grantor's mind to the type and extent of the influence exerted. Weakness of mind and body, whether produced by age or disease, may be material circumstances in establishing this element of undue influence. A final element is the establishment of the fact that the instrument executed would not have been executed but for such influences. This element is usually predicated upon a consideration of whether the executed instrument made an unnatural disposition of the property. Rothermel v. Duncan, supra.

Mrs. Bounds was 84 years of age and in ill health at the time she executed the deed. Her personal physician, who also witnessed the deed in question, testified without contradiction that her mental condition was such that she might have been easily influenced by one in whom she had confidence. She admittedly had confidence in her son Charles and she had been well cared for by him and his wife for many years. She had relied on him for business advice. Up until the time she revoked her daughter's power of attorney and the guardianship application was filed Mrs. Bound had no ill feelings toward any of her children. There is positive evidence appellant was instrumental in securing the revocation of the power of attorney; that he represented to his mother that his sisters had abandoned her and that they had filed the guardianship proceeding for the purposes of placing her in a rest home and getting her property. Mrs. Bounds testified she believed these representations. Although she testified she could not remember executing the deed she admitted she harbored this belief against her daughters until they were reunited in April of 1962. The only direct evidence that Mrs. Bounds would not have executed the deed but for the representations of the appellant came from Mrs. Bounds herself. We agree with appellant that this is an anomaly in that she could not remember the transaction, but the discarding of this portion of her testimony would not remove the circumstantial evidence surrounding this whole transaction. We think it is significant that the deed was executed within this short period of time when the family dispute and ill feelings were at their highest. This is a clear inference the filing of the guardianship application was the motivating factor that brought on the execution of the deed. The representations made by appellant to Mrs. Bounds concerning the guardianship aggravated its effect. Under this record, when considered in the proper light, we can reach no other conclusion than that the representations made by appellant created a belief in the mind of

Mrs. Bounds that the deeding of the land to appellant was the only way she had to deprive her daughters of securing this land from her. We are of the opinion the elements of the exertion and the effective operation of undue influence by appellant over Emma Bounds so as to influence her to execute the deed are supported by competent evidence.

In determining appellant's contention that the jury verdict is against the great weight and preponderance of the evidence as to be manifestly unjust, we must consider all of the evidence, both that which supports the verdict and that which does not. Aside from the evidence which was briefly summarized above, appellant offered evidence which either contradicted or qualified appellee's evidence. Appellant contends, and rightly so, that the record contains no evidence of any words spoken by appellant to his mother about the conveyance of the west Texas land. This is the usual case and is the basis of the rule permitting proof of undue influences by circumstantial evidence. Both Dr. Buckmeyer and Dr. C. A. Williford witnessed the execution of the deed. Dr. Buckmeyer testified he explained the transaction to Mrs. Bounds and that she responded to the explanation. The doctor observed Mrs. Bounds was "distraught" with her daughters after the guardianship proceeding was filed, but he did not know of the other aspects of the family dispute. Mrs. Julia Mead, sister of Mrs. Bounds, testified Mrs. Bounds told her she had "about decided to deed the west Texas land to Charles", and later called him in and told him of her decision. This was not corroborated by the other witnesses whom Mrs. Mead testified were present at this time. Before we can set aside jury findings as being insufficiently supported by the evidence, the answers must be so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust or wrong. Continental Bus System v. Biggers (Tex.Civ.App.), 322 S. W.2d 1. In appraising all of the evidence in the light of the applicable rules, we are unable to say the jury verdict is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust or clearly wrong.

Appellant's first two points of error contend the trial court erred in overruling his special exceptions to certain pleadings of appellee. The allegations complained of include: "To the extent that as she became progressively feeble in mind and body, the said defendant acquired controlling influence and dominion over her"— "The defendant was able to and did practice undue influence upon her at the very time—under the conditions aforesaid, controlled her volition and induced her to do that which she otherwise would not have done." These allegations, along with others which need not be set out here, were excepted to on the grounds they were conclusions of the pleader, irrevelant, immaterial, inflammatory and prejudicial. The allegations complained of have been reviewed. The trial court is granted a large measure of discretion in passing on exceptions to the pleadings. In the absence of a showing of abuse of discretion or injury resulting from the trial court's ruling, the ruling will not be disturbed. Weiler v. Weiler (Tex.Civ. App.), 336 S.W.2d 454.

Appellant's 9 remaining points of error relate to the admission of allegedly improper testimony. The objection most frequently asserted was that of hearsay and some evidence was objected to on the ground it was irrelevant, prejudicial and harmful. In seeking to set aside the deed in question, appellee had the burden to prove the allegation of undue influence and false representations. The very nature of undue influence involves the state of mind of the party pleading it, and the law recognizes the difficulty incurred in proving a person's state of mind. Smith v. Jungkind (Tex.Civ.App.), 252 S.W.2d 596 (Writ Refused); Brooks v. Taylor (Tex.Civ.App.), 359 S.W.2d 539 (NRE). The record of the testimony in this case is voluminous. Much of the testimony was repetitious and

hotly contested. Although some inadmissible testimony was received the appellant has shown nothing which demonstrates that the admission of such evidence probably caused the entry of an improper judgment in the case. Rule 434, T.R.C.P.

We have carefully considered the entire record and all points of error urged by appellant and conclude they present no reversible error.

The judgment of the trial court is affirmed.

Affirmed.