A.S. HOLCOMB, Jr., Appellant,

v.

Anita HOLCOMB, Appellee.

No. 05–90–00082–CV.

Court of Appeals of Texas,
Dallas.

Jan. 8, 1991.

Rehearing Denied Feb. 12, 1991.

W.W. Mitchell, II, Harold Berman, Eugenia Hargrave, Berman & Mitchell, Dallas, for appellant.

W. Bruce Monning, Vial, Hamilton, Koch & Knox, Richard N. Countiss, Burrow & Williams, Dallas, for appellee.

Before ENOCH, C.J., and BAKER and LAGARDE, JJ.

## OPINION

ENOCH, Chief Justice.

This is a will contest. The testator, A.S. Holcomb, Sr. (Mr. Holcomb) executed several different wills at various times. His two children, A.S. Holcomb, Jr. (Sid) and Anita, offered into probate the last of these wills. Anita later contested this and one earlier will, and offered for probate a will executed on December 1, 1983. After a jury trial, the trial court entered a judgment based on the jury findings which set aside the later two wills because of undue influence and admitted the December 1st will into probate.

In this appeal, Sid challenges the sufficiency of the evidence to support the jury's findings of undue influence. He also challenges the materiality of certain issues submitted to the jury, and urges that Anita was estopped from contesting the latest will because she accepted benefits under that will. For the reasons stated, we affirm the judgment.

### Facts

Relatively few facts are in dispute. Mr. Holcomb and his wife, Marie Holcomb, were divorced in 1969. A substantial marital estate, comprised primarily of real property, was equally divided between the spouses. The divorce was acrimonious and subsequent familial relations were strained. The couple's two children, Anita and Sid, were of college age at the time. Sid became aligned with the mother, although he also maintained a relationship with his father. Anita became aligned with the father, and had virtually no contact with the mother during the ensuing years.

The lack of family harmony concerned Mr. Holcomb. He spoke often of his desire for his children to reconcile and develop a loving brother/sister relationship. Mr. Holcomb also spoke of his desire that both of his children be provided for equally after his death. He recognized that his son would eventually inherit that share of the marital estate which the divorce decree awarded to his ex-wife. In his desire to see both of his children equally provided for, he indicated that the bulk of his estate would pass to his daughter.

In the fall of 1983, Mr. Holcomb requested that his attorney prepare a will that gave effect to this intent. This will expressly stated that Anita would receive the bulk of Mr. Holcomb's estate because Sid had received a substantial amount of property from his mother. Mr. Holcomb entered the hospital in late November 1983. While confined in the hospital, Mr. Holcomb requested that his attorney be contacted to bring the will to the hospital. This was done, and it was executed on December 1, 1983.

After his release from the hospital, Mr. Holcomb executed two subsequent wills. On December 19, 1983, he executed a document which purported to revoke all previous wills and devise his estate equally to both his children, share and share alike. Only five rent houses which had previously been conveyed to the daughter were ex-

pressly excluded from this equal division. Finally, Mr. Holcomb directed his attorney to draft a third will. This will revoked all previous wills and devised all Mr. Holcomb's property, including the five rent houses, in equal · shares to his children, share and share alike. This will, which also named the children as co-independent executors, was executed by Mr. Holcomb in his attorney's office on February 1, 1984.

Shortly after the execution of this last will, Mr. Holcomb re-entered the hospital. He lapsed into a coma and died on February 26, 1984. This February 1st will was admitted into probate, with the son and daughter acting as co-executors. Substantial distributions were made in equal amounts to both children. Nearly two years after this will was admitted into probate, Anita initiated this will contest.

### Anita's Claims

Anita asserts that both the December 19th and February 1st wills, and the corresponding revocations of all prior wills, were invalid. She alleges that her brother brought about the execution of these wills by exerting undue influence on their father by misrepresenting to their father the value of the property that he had been or would be given by their mother. Anita further alleges that Sid made a commitment to their father that he would equalize the combined estates of both parents to ensure that both children were provided for. Anita claims that this commitment, along with the misrepresentation of the size of the mother's estate, led to Mr. Holcomb's decision to change his will to effectuate his life-long goal of seeing his children equally provided for. She claims that at the time her brother made this commitment he had no intention of fulfilling his promise to Mr. Holcomb.

At trial, Sid denied promising to equalize the estates. He contends his commitment to his father was simply to try to get along with his sister. Sid claimed his father removed the exclusion of the five rent houses from the February 1st will to allow these houses to act as a "tiebreaker" between the children if the need arose.

The jury answered all questions presented in favor of Anita. It found that the two later wills, but not the December 1, 1983 will, had been executed as a result of undue influence or mistake. The jury further found that Sid promised his father he would share with his sister the property conveyed to him by his mother in return for the execution of both the December 19, 1983 and the February 1, 1984 wills. Additionally, in support of Anita's alternative prayer for the imposition of a constructive trust, the jury found that a confidential relationship existed between Sid and his father. Based upon these answers, the trial court set aside the probate of the February 1, 1984 will and admitted into probate the will executed on December 1, 1983.

### Sid's Challenges

In nine points of error, Sid raises three basic issues. In his first point of error, Sid contends that Anita is estopped from contesting the February 1, 1984 will because she has accepted benefits thereunder. Next, in points of error two, three, four, five, and eight Sid generally challenges the sufficiency of the evidence to support the jury findings regarding the exercise of undue influence. Finally, in points six, seven, and nine Sid claims that the jury's answers to questions regarding mistake and the existence of a confidential relationship are not material to any issue germane to the trial.

### I. Estoppel

█ Sid's first point of error alleges that once having accepted benefits under the February 1, 1984 will, Anita is estopped from contesting this will. Sid cites as the leading Texas case in this area *Trevino v. Turcotte*, 564 S.W.2d 682, 685–86 (Tex. 1978). Sid also relies on a previous rendition of the *Trevino* saga, *Turcotte v. Trevino*, 499 S.W.2d 705 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). His reliance is based on language in both cases which he asserts holds that one who has accepted benefits under a will is estopped from contesting that will unless he demonstrates an

intent to revoke such acceptance. *Trevino,* 564 S.W.2d at 686; *Turcotte,* 499 S.W.2d at 715.

Sid's reliance is misplaced. The threshold question is whether any benefits which Anita received make her "challenge of the will *inconsistent* with the acceptance of benefits." *Trevino,* 564 S.W.2d at 689 (emphasis added). Sid must demonstrate that Anita had in fact received benefits to which she would not be entitled under either will, or even under the laws of intestacy. To support his affirmative defense of estoppel, Sid is required to conclusively establish all its essential elements and demonstrate he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). From the record before us, Sid has failed to establish as a matter of law that Anita accepted benefits under the probated will over those which she would otherwise have been entitled to. Consequently, we do not reach the question of whether she was required to prove she revoked such acceptance. We overrule Sid's point of error one.

## II.  Undue Influence/Sufficiency of the Evidence

■ In his fourth point of error, Sid attacks the jury's failure to find undue influence in the execution of the December 1st will. A court of appeals is authorized to reverse and remand a cause for a new trial if it concludes that a jury's failure to find is against the great weight and preponderance of the evidence as Sid alleges. *See Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988).

■ A will may be set aside for undue influence if a contestant proves: (1) the existence and exertion of an influence; (2) the effective operation of such an influence that the mind of the testator is subverted or overpowered at the time of the will's execution; and (3) the execution of a will which the testator would not have executed but for that influence. *Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963). Evidence was presented at trial that Mr. Hol-

comb directed his attorney to draft the December 1st will several weeks prior to his confinement in the hospital. There was testimony that Mr. Holcomb often related his desire for his daughter to gain an equal share of his previous marital estate. At his insistence, the will expressly mentioned that his son would be equally provided for by receiving property from his mother. During his hospitalization, Mr. Holcomb specifically requested that this will be brought to him for execution. He specifically named those individuals he wished to act as witnesses. His attending physician was present at the execution, acted as one of the witnesses, and performed a standard medical procedure to determine Mr. Holcomb's mental capacity prior to the execution of the will. We find sufficient support in the record to justify the jury's failure to find that undue influence was exercised which affected the execution of the December 1, 1983 will. We therefore overrule this point of error.

■ Sid's remaining points of error which relate to undue influence challenge the sufficiency of the evidence to support those jury findings which invalidated Mr. Holcomb's last two wills. A reviewing court is to set aside a verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

■ The Texas Supreme Court has long recognized that it is impossible to lay down hard and fast rules on what a record must contain to affirmatively establish undue influence. No definition can embrace all forms and phases of that term. *Long v. Long,* 133 Tex. 96, 99, 125 S.W.2d 1034, 1035 (1939). *Long* holds undue influence can compel a testator to act against his will because of his desire for peace. *See also Furr v. Furr,* 403 S.W.2d 866, 871 (Tex. Civ.App.—Fort Worth 1966, no writ). Undue influence need not be accomplished forcibly and directly, as at the point of a gun. It is more often exercised by subtle and devious, but no less effective, means, such as deceit and fraud. *In re Olsson's Estate,*

344 S.W.2d 171, 173–74 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.). Although undue influence may be exercised consistently and successfully over a long period of time, such influence or deception need only be exercised immediately prior to the execution of the will in question. *Grohn v. Marquardt*, 657 S.W.2d 851, 855 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

Undue influence and fraud in the inducement of a dispositive instrument are sometimes viewed as separate and distinct grounds for invalidating a will. The courts of this state, however, treat the two as one, viewing undue influence as a species of legal fraud. *Curry v. Curry*, 153 Tex. 421, 270 S.W.2d 208, 214 (1954). The evidence adduced at trial showed that Mr. Holcomb's desire was for both his children to be equally provided for. His December 1st will accomplished this goal by offsetting the property conveyed to the son by the mother by providing that all his property would go to his daughter. There was testimony that after the execution of this will, Sid told his father that the property conveyed to him by his mother was less valuable than Mr. Holcomb believed, and that Sid made an agreement with his father to equalize both estates if the father would devise his estate equally between his two children. Sid testified he made no such agreement. The jury heard sufficient evidence to conclude that the agreement was made, and that Sid had no present intention to perform the agreement. *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex.1971) (denial of promise with other evidence, sufficient to support verdict). This intent not to fulfill his promise is part and parcel of the undue influence, fraud in the inducement, which led to the execution of a will which Mr. Holcomb would not have exercised but for this influence.

The jury found undue influence. It is well established that an appellate court cannot merely substitute its own judgment for that of a jury. *Cropper*, 754 S.W.2d at 651. As a result, we are required to indulge the presumption that the jury chose to believe and accept all probative evidence to sustain its verdict. *Long*, 125 S.W.2d at 1036; *Furr*, 403 S.W.2d at 867; *Olsson*, 344 S.W.2d at 174. For these reasons, we overrule Sid's points of error two, three, five, and eight.

In point of error six, Sid challenges the jury finding of mistake of fact as to the execution of the middle will both on insufficiency of the evidence and materiality grounds. As covered above, the evidence is sufficient to support the jury finding that Mr. Holcomb was mistaken as to the extent of the property transferred by his ex-wife to his son. Sid, however, argues that Mr. Holcomb's mistake of fact regarding the value of property Sid had received from his mother is not grounds for invalidating the December 19, 1983 will. We note that a mistake of fact or law alone will not defeat the probate of a will even though the testator would have made a different will but for the mistake inducing the making of the will. Coupled with undue influence or fraud perpetrated upon the testator, such a mistake is sufficient to deny probate of such an instrument. In addition to the mistake, the jury also found that the revocation language in the December 19th will was procured by undue influence. Since the jury found both of these elements in connection with the execution of this middle will, the trial court acted properly in finding the December 19th will invalid. *Kaufhold v. McIver*, 682 S.W.2d 660, 667 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Carpenter v. Tinney*, 420 S.W.2d 241, 244 (Tex.Civ.App.—Austin 1967, no writ). Point of error six is overruled.

Having overruled points of error one through six and eight, we hold that the trial court was correct in probating the December 1, 1983 will. Because of this, we need not address points of error seven and nine.

The judgment of the trial court is affirmed.