Opinion issued April 27, 2006
 
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01091-CV
____________

GEORGE C. BROWN, Appellant

V.

 LUCY TRAYLOR, DARRYL KEITH WALKER, PAUL WAYNE
WALKER, ANTHONY C. WALKER, TERRY L. WALKER, and JAMES E.
WALKER, Appellees




On Appeal from Probate Court No. 4
Harris County, Texas
Trial Court Cause No. 323,033-401




O P I N I O N
          Appellant, George C. Brown (“George”), appeals from a judgment, rendered
upon a jury verdict, probating what the jury concluded was a true and correct copy
of the will of his father, Henry Brown (“Henry”), deceased. We determine whether
(1) legally sufficient evidence supported the jury’s award of attorney’s fees to
appellee Lucy Traylor (“Traylor”), who was appointed administrator of Henry’s
estate; (2) the trial court erred in refusing a jury instruction stating that a testator must
publish the will to the subscribing witnesses; (3) George waived all but one of his
legal-sufficiency challenges; (4) the evidence was factually sufficient to support
various express and implicit jury findings; and (5) we have jurisdiction over George’s
appellate complaints concerning a post-judgment order appointing a substitute
administrator when no appeal was perfected from that order. We affirm the judgment
in part, reserve it in part with respect to the award of attorney’s fees, and remand the
cause for a determination of matters relating to attorney’s fees.
Background
          George was Henry’s son. Traylor was a long-time friend of Henry and his
wife. Henry died on April 15, 2001 at the age of 81. On June 20, 2001, George filed
an application to determine heirship, alleging that Henry had died intestate. In
response, on October 11, 2001, Traylor filed an opposition to George’s application,
and she simultaneously moved the trial court to order George to file Henry’s original
will, which she alleged that Henry had executed on March 13, 1999. When the
original will could not be located, Traylor filed, on February 5, 2002, a verified
application to probate a copy of the March 13, 1999 will (“the will copy”). On April
19, 2002, George filed an opposition to Traylor’s probate application and counter-sued Traylor and her daughter, Pamela Ann Yancy (“Yancy”)—the notary public who
had drafted the March 13, 1999 will—for civil conspiracy to commit forgery and
fraud, based on their filing what he claimed was a forged copy of the will, seeking
actual and exemplary damages.
          The jury found that (1) Henry had testamentary capacity on March 13, 1999;
(2) Henry signed the March 13, 1999 will; (3) Melva Collins (“Collins”),


 Wanda
Walker (“Wanda”),


 Darryl Keith Walker (“Darryl”),


 and Yancy each “subscribed
his or her name in his or her own handwriting to the [March 13, 1999 will] while in
the presence of Henry Brown at a time when he or she was above the age of 14
years”; (4) the will copy was not forged;


 (5) Henry did not revoke the March 13,
1999 will; (6) the will copy was a true and correct copy of Henry’s March 13, 1999
will;


 (7) Traylor acted in good faith and with just cause in defending the March 13,
1999 will;


 and (8) Traylor’s reasonable and necessary attorney’s fees incurred in
trying to probate the will were $20,000. Based on the jury’s findings, the trial court
admitted the will copy to probate, rendered a take-nothing judgment on George’s
claims against Traylor and Yancy, appointed Traylor to be dependent administratrix
with will annexed of Henry’s estate, and awarded Traylor $20,000 in attorney’s fees. 
George moved for new trial, which was denied by operation of law.
Traylor’s Attorney’s Fees
          In answering jury question seven, the jury expressly found that Traylor acted
in good faith and with just cause in defending the March 13, 1999 will for the purpose
of having it admitted to probate. In answering jury question eight, the jury found that
that $20,000 would fairly and reasonably compensate her for the necessary legal
services rendered in trying to probate the will. The instruction accompanying jury
question eight provided that
in ascertaining the reasonable value of services of an attorney, you may
take into consideration the time and labor required; the novelty and
difficulty of the questions involved, and the skill required to perform the
legal services properly; the fee customarily charged in the locality for
similar legal services; the amount involved and the results obtained; and
the experience, reputation and ability of the lawyer or lawyers
performing the services.

See Tex. Disciplinary R. Prof’l Conduct 1.04, reprinted in Tex. Gov’t Code
Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9)
(establishing similar, but also additional, criteria to be considered in determination
of reasonableness of attorney’s fees). 
          In issue seven, George argues that the trial court abused its discretion in
overruling his objection to the admission of Traylor exhibits 10 and 14—fee
statements that she offered as evidence of her attorney’s fees—because those exhibits
were offered through Traylor, who was not an expert. George argues that this error
was harmful because “there was no other evidence to support the jury’s answer” to
the jury question concerning the amount of attorney’s fees. Under a liberal
construction of his issue seven,


 George alternatively argues that (1) even if these two
exhibits were properly admitted, they were legally insufficient to support the award
of attorney’s fees because they could not substitute for the expert testimony required
to prove up the amount of attorney’s fees and (2) Traylor produced no expert
testimony proving up the amount of her fees. We understand George’s legal-sufficiency challenge to attack only the jury’s finding on question eight, not question
seven.
          1.       The Law
When any person designated as executor in a will or an alleged will, or
as administrator with the will or alleged will annexed, defends it or
prosecutes any proceeding in good faith, and with just cause, for the
purpose of having the will or alleged will admitted to probate, whether
successful or not, he shall be allowed out of the estate his necessary
expenses and disbursements, including reasonable attorney’s fees, in
such proceedings.

Tex. Prob. Code Ann. § 243 (Vernon 2003). “Expert testimony is required to
support an award of attorney’s fees.” Woollett v. Matyastick, 23 S.W.3d 48, 52 (Tex.
App.—Austin 2000, pet. denied) (so holding in context of attorney’s fees awarded to
guardian in guardianship proceeding); Barrett v. Parchman, 675 S.W.2d 289, 291–92
(Tex. App.—Dallas 1984, no writ) (sustaining no-evidence challenge to attorney’s
fees awarded to temporary administratrix of estate when no expert testimony
supported fee award and when only evidence of reasonableness and necessity of fees
was administratrix’s testimony).
           2.       Standards of Review
          Addressing George’s primary argument under issue seven, we review the
admission of evidence for abuse of discretion. See In re J.P.B., 180 S.W.3d 570, 575
(Tex. 2005).
          George’s alternative argument under issue seven requires us to conduct a legal-sufficiency review, in which “we must view the evidence in a light that tends to
support the finding of disputed fact and disregard all evidence and inferences to the
contrary.” Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). 
However, “[t]he final test for legal sufficiency must always be whether the evidence
at trial would enable reasonable and fair-minded people to reach the verdict under
review.  . . . [L]egal-sufficiency review in the proper light must credit favorable
evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not.” City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005).
          The jury is the sole judge of witnesses’ credibility, and it may choose to believe
one witness over another; a reviewing court may not impose its own opinion to the
contrary. Id. at 819. Because it is the jury’s province to resolve conflicting evidence,
we must assume that jurors resolved all conflicts in accordance with their verdict if
reasonable human beings could do so. Id.
          When, as here, an appellant attacks the legal sufficiency of an adverse finding
on an issue for which he did not have the burden of proof, the appellant must
demonstrate that there is no evidence to support the adverse finding. Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983). Such a no-evidence challenge will be
sustained when “‘(a) there is a complete absence of evidence of a vital fact, (b) the
court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more
than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the
vital fact.’” King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).
          3.       Admission of the Fee Statements
          George objected to only exhibit 10, not to exhibit 14. He thus waived his
challenge to the admission of exhibit 14.


 See Tex. R. App. P. 33.1(a)(1). His failure
to object to exhibit 14, however, does not render harmless the admission of exhibit
10 (assuming that it was error to admit exhibit 10). Exhibit 14 was a supplement to
the billing statement (exhibit 10) previously admitted into evidence; it was not merely
the same evidence offered a second time, and exhibit 14 documented only $7,087.50
in fees. Therefore, the admission of Exhibit 14 did not render harmless the fee
information contained in exhibit 10, assuming without deciding that exhibit 10 was
improperly admitted. See Tex. R. App. P. 44.1(a).
 
          4.       Sufficiency of the Evidence
          We need not consider whether exhibit 10 was improperly admitted for lack of
expert predicate because, even if it was not, there would still be no evidence of the
necessity for, or the reasonabless of, Traylor’s attorney’s fees. Traylor testified as
follows:
Traylor’s counsel:Now, when you came to my office, you asked me to
help you in this matter; is that correct?
 
Traylor:Right.
 
Traylor’s counsel:And did you need a lawyer to represent you at that
time?
 
Traylor:Yes.
 
Traylor’s counsel:And I agreed to represent you; is that correct?
 
Traylor:Right.
 
Traylor’s counsel:And you agreed to hire me as your attorney?
 
Traylor:Right.
 
Traylor’s counsel:And you agreed to pay me $175 an hour?
 
Traylor:I sure did.
 
. . .
 
Traylor’s counsel:Now, my fees charged to you were reasonable and
necessary? My fees—



 
George’s counsel:Objection, calls for expert testimony. She’s not
qualified as an expert to testify to that.



 
Traylor’s counsel:I think she can say whether they’re reasonable or
necessary.
 
Court:I think it would go to the weight of her testimony. 
So, she can answer, if you like.
 
Traylor’s counsel:You didn’t ask—did you have anyone else to file a
lawsuit and file a motion for probate to protect your
interests?
 
Traylor:No.
 
Traylor’s counsel:Could you have done it yourself? Could you have
done it yourself?
 
Traylor:No.
 
Traylor’s counsel:So, my working for you was necessary, was it not? 
You needed me to work for you?
 
Traylor:Right.

          Traylor’s counsel soon thereafter offered exhibit 10:
 
Traylor’s counsel:At this time, Judge, I would offer Traylor No. 10,
which is my fee statement. And I will also advise
the Court that that’s not a complete fee statement. It
does not include trial dates, and the trial and does
not include work that was done in the latter part of
August, 2004.
 
George’s counsel:Well, this document is hearsay. We, also, object
under Rule 701 and 702 because it calls for expert
opinion testimony. There’s been no expert to get up
on the witness stand to testify that their attorney’s
fees are reasonable and necessary. And this is all
hearsay.
 
Traylor’s counsel:Judge, you can take judicial notice of the Court’s file
and judicial notice of attorney’s fees. If necessary,
I can testify.
 
Court:I think he can testify. So, I will let it in.

The next day, the trial court admitted Traylor exhibit 14, after this discussion:
Court:On your additional attorney’s fees, I believe you did
testify during the trial about your hourly rate and
said you didn’t know the number of hours yet. And
I understand you want to supplement to show the
number of hours you have?
 
Traylor’s counsel:That’s correct. That’s Traylor Exhibit No. 14.
 
Court:It shall be admitted.

          The exhibits themselves merely set out what work was done and what was
charged; they contain no information concerning the reasonableness and necessity of
the fees incurred or charged.
          We hold that, even if Exhibit 10 was properly admitted and thus may be
considered in our sufficiency review, and even though no objection was made to
exhibit 14, Traylor presented no evidence of reasonableness or necessity to support
the jury’s award of $20,000 in attorney’s fees to Traylor. We measure the sufficiency
of the evidence against the charge given because no one objected to it,


 and that
charge required proof of reasonableness and necessity by evidence such as the time
and labor required; the novelty and difficulty of the questions involved; the skill
required to perform the legal services properly; the fee customarily charged in the
locality for similar legal services; the amount involved; the results obtained; and the
experience, reputation, and ability of the lawyer or lawyers performing services for
Traylor. So did the law. See Ragsdale v. Progressive Voters League, 801 S.W.2d
880, 881 (Tex. 1990) (“In awarding attorney’s fees the trial court, as the trier of fact,
must take into account various factors such as: the nature and complexity of the case;
the nature of the services provided by counsel; the time required for trial; the amount
of money involved; the client’s interest that is at stake; the responsibility imposed
upon counsel; and the skill and expertise required.”); see also Hamil v. Caver, No.
B14-90-00125-CV, 1991 WL 24560, at *5–6 (Tex. App.—Houston [14th Dist.] Feb.
28, 1991, writ denied) (not designated for publication) (holding that attorneys’
testimony of reasonableness and necessity—in light of hours billed, hourly rate,
reasonable rates in area, complexity of case, and like factors—supported award of
attorney’s fees under Probate Code section 243). The law also required that
reasonableness and necessity be proved by expert testimony. See Woollett, 23 S.W.3d
at 52; Barrett, 675 S.W.2d at 291. The fee statements did not speak to these
matters,


 Traylor was not an expert on attorney’s fees,


 and no expert testified to the
reasonableness and necessity of the attorney’s fees that Traylor incurred. See Barrett,
675 S.W.2d at 291–92. 
          Traylor first responds by arguing that “[t]he requirement of necessity of the
attorney’s fees award was presumed under [section] 243 once the jury found that
Traylor was acting in good faith and with just cause.”


 (Emphasis added.) The cases
that Traylor cites in support do not hold or intimate that such a presumption arises,
however. See Russell v. Moeling, 526 S.W.2d 533, 535–36 (Tex. 1975); Huff v. Huff,
124 S.W.2d 327, 329 (Tex. 1939). In fact, neither these cases nor the statute’s plain
language supports Traylor’s position. The Legislature provided that the executor or
administrator “shall be allowed . . . his necessary expenses and disbursements,
including reasonable attorney’s fees”


—that is, the Legislature provided that the
only attorney’s fees that must be awarded are those that are both necessary and
reasonable, implying that the necessity and reasonableness of those fees must still be
shown. 
          Traylor next responds that “the [trial] court can take judicial notice of the
reasonableness of the [attorney’s] fees” in this case because Texas Civil Practice and
Remedies Code sections 38.003 and 38.004 apply by analogy and allow both a
presumption of reasonableness and the court’s judicial notice of customary attorney’s
fees. Civil Practice and Remedies Code section 38.003 expressly provides for a
presumption, but no such express statutory presumption exists in Probate Code
section 243. Compare Tex. Civ. Prac. & Rem. Code Ann. § 38.003 (Vernon 1997)
(“It is presumed that the usual and customary attorney’s fees for a claim of the type
described in Section 38.001 are reasonable. The presumption may be rebutted.”) with
Tex. Prob. Code Ann. § 243 (not expressly providing for any such presumption). 
Additionally, Civil Practice and Remedies Code section 38.004 allows a court to take
judicial notice of usual and customary attorney’s fees, but only in a bench trial or in
a jury trial in which the parties have agreed to submit the question of the amount of
attorney’s fees to the court. See Tex. Civ. Prac. & Rem. Code Ann. § 38.004
(Vernon 1997). By its own terms, then, section 38.004—even assuming without
deciding that that section could apply by analogy—would not apply here, where the
issue of the amount of attorney’s fees was submitted to the jury.
          We thus hold that the evidence was legally insufficient to support the jury’s
award of $20,000 in attorney’s fees to Traylor. However, George preserved this
legal-sufficiency challenge in his motions for new trial, rather than in a motion for
instructed verdict, a motion for judgment notwithstanding the verdict, an objection
to the submission of a jury issue, or a motion to disregard the jury’s answer on a vital
fact issue. Accordingly, George is entitled only to a remand, rather than to a
rendition. See Horrocks v. Tex. Dep’t of Transp., 852 S.W.2d 498, 499 (Tex. 1993). 
          We sustain the portion of issue seven concerning legal sufficiency of the
evidence of the jury’s award of attorney’s fees under question eight. We thus need
not reach that portion of issue seven concerning the propriety of admitting exhibit 10.
          “If the error affects part of, but not all, the matter in controversy and that part
is separable without unfairness to the parties, the judgment must be reversed and a
new trial ordered only as to the part affected by the error.” Tex. R. App. P. 44.1(b). 
This case presents such a situation. See Woods Exploration & Producing Co. v. Arkla
Equip. Co., 528 S.W.2d 568, 571 (Tex. 1975) (severing portion of judgment awarding
attorney’s fees, reversing that portion of judgment, and remanding cause).


 
Concluding that the matter of the amount of attorney’s fees is severable from the
remainder of the judgment, we reverse only that portion of the judgment awarding
attorney’s fees to Traylor. 
The Validity of the Will and the Propriety of Probating the Will Copy
A.      The Will Copy
          The March 13, 1999 will consisted of five pages. The first three pages
appeared in larger font and named Wanda as executrix of his estate “without bond,”
with George as alternate executor. On the will’s third page appeared the following
distributions:
To Wanda Walker:30 percent of my estate
 
To George C. Brown:30 percent of my estate
 
To Leonia Simpson:20 percent of my estate
 
To James Austin:10 percent of my estate
 
To Lucy Traylor:10 percent of my estate

Also on the third page, immediately following the distributions, appeared the
following recital:
I herewith affix my signature to this will on this the 13th day of
 March , 1999, at Houston, Texas, in the presence of the following
witnesses, who witnessed and subscribed this will at my request and in
my presence.

 
[notary seal of Pamela Yancy]

No signature appeared on page three, however. Rather, on page four, in smaller and
different typesetting, appeared the following:
STATE of Texas
COUNTY of Harris
 
Before me, the undersigned authority authorized to take
acknowledgments and administer oaths, personally appeared
 
Henry J.


 BrownHenry Brown



 
 
 Henry Brown 
 
 
who after being having [sic] duly sworn or affirmed to tell the truth,
stated:
 
1.That Henry J. Brown declared this instrument to be his last will
and testament to the witnesses.
 
2.That Henry J. Brown signed this instrument in their presence.
 
3.That the witnesses signed as witnesses in the presence of Henry
J. Brown and each other.
 
4.That Henry J. Brown is well known to the witnesses, and the
witnesses believe Henry J. Brown to be of lawful age, of sound mind
and under no undue influence or constraint.
 
 Pamela A. Yancy 
Officer
 
Title of Officer: Notary 
 
My Commission Expires: 01-29-2002 

 
[notary seal of Pamela Yancy]

The fifth and final page of the will copy, which appeared in the same font as that on
page four, read as follows:

ATTESTATION CLAUSE
 
On the date above written, Henry J. Brown, well known to us, declared
to us, and in our presence, that this instrument, consisting of 5 



pages, is his last will and testament, and Henry J. Brown then signed this
instrument in our presence, and at Henry J. Brown’s request we now
sign this will as witnesses in each other’s presence. Further that Henry
J. Brown, appeared to us to be of sound mind and lawful age, and under
no undue influence.
 
Witness:
 
 Melva L. Collins 
 
Address: [address indicated] 
 
Witness:
 
 Wanda Walker 
 
Address: [address indicated] 
 
Witness:
 
 Darryl K. Walker 
 
Address: [address indicated] 

 
[notary seal of Pamela Yancy]
 
B.      The Law
          “Every person who meets the requirements prescribed in Section 57 of the
Probate Code ‘shall have the right and power to make a last will and testament, under
the rules and limitations prescribed by law.’” Estate of Morris, 577 S.W.2d 748, 756
(Tex. Civ. App.—Amarillo 1979, writ ref’d n.r.e.) (quoting Tex. Prob. Code Ann.
§ 57 (Vernon 2003)). “When one meets the legal requirements, properly executes a
will and provides for a disposition of his property not violative of public policy, his
testamentary disposition should be respected.” Id.
          To be valid, every will must, with exceptions inapplicable here,
(1)be in writing and signed by the testator in person or by another
person for him by his direction and in his presence and
 
(2)if not wholly in the testator’s handwriting, be attested by two or
more credible witnesses above the age of 14 years, who must
subscribe their names thereto in their own handwriting and in the
testator’s presence.

Tex. Prob. Code Ann. § 59(a) (Vernon 2003). “[A]ttestation of a will is the act of
witnessing the performance of the statutory requirements to a valid execution of the
will.” Zaruba v. Schumaker, 178 S.W.2d 542, 543 (Tex. Civ. App.—Galveston 1944,
no writ). A “credible” witness means a competent witness. Triestman v. Kilgore, 838
S.W.2d 547, 547 (Tex. 1992). “A competent witness to a will is one who receives no
pecuniary benefit under its terms.” Id. The witnesses need not see the testator sign
the will, as long as they can attest, from direct or circumstantial facts, that the testator
in fact executed the document that they are signing.


 Neither must they sign the will
in each other’s presence. See, e.g., Zaruba, 178 S.W.2d at 543; Davis v. Davis, 45
S.W.2d 240, 241 (Tex. Civ. App.—Beaumont 1931, no writ). 
          Because the will copy did not contain a self-proving affidavit,


 Traylor, as the
will’s proponent, had to prove the following:
 
(1). . . that the testator, at the time of executing the will, was
at least eighteen years of age . . . and was of sound mind; and
 
(2). . . that the testator executed the will with the formalities
and solemnities and under the circumstances required by law to make it
a valid will; and
 
(3)[t]hat such will was not revoked by the testator.

Tex. Prob. Code Ann. § 88(b) (Vernon 2003). “No will in writing, and no clause
thereof or devise therein, shall be revoked, except by a subsequent will, codicil, or
declaration in writing, executed with like formalities, or by the testator destroying or
canceling the same, or causing it to be done in his presence.” Id. § 63 (Vernon 2003). 
When a will that was last seen in the testator’s possession cannot be found after his
death, a rebuttable presumption of revocation arises. See In re Estate of Capps, 154
S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no pet.). That presumption may be
overcome by proof and circumstances contrary to the presumption or by proof that
the will was fraudulently destroyed by another person. Id.
 
          Because she sought to probate a copy of a March 13, 1999 will, rather than the
original will, Traylor also had to “proceed under section 85 of the Probate Code,
which provides the requirements for proving a ‘written will not produced in court.’” 
Garton v. Rockett, No. 01-04-01037-CV, 2005 WL 3494962, at *5 (Tex.
App.—Houston [1st Dist.] Dec. 22, 2005, no pet.) (quoting Tex. Prob. Code Ann.
§ 85 (Vernon 2003)).
A written will which cannot be produced in court shall be proved in the
same manner as provided in [Probate Code section 84] for an attested
written will or an holographic will, as the case may be, and the same
amount and character of testimony shall be required to prove such will
as is required to prove a written will produced in court . . . .

Tex. Prob. Code Ann. § 85. Additionally, section 85 requires that
 
the cause of [the written will’s] non-production . . . be proved, and such
cause must be sufficient to satisfy the court that it cannot by any
reasonable diligence be produced, and the contents of such will must be
substantially proved by the testimony of a credible witness who has read
it or heard it read.

Id. Section 84, the requirements of which section 85 incorporates, provides in
pertinent part that, “[i]f not self-proved as provided in this Code, an attested written
will produced in court may be proved: (1) By the sworn testimony or affidavit of one
or more of the subscribing witnesses thereto, taken in open court.” Id. § 84(b)(1)
(Vernon 2003).
C.      The Charge
          In issue one, George argues that the trial court erred in “failing to submit a
proper jury question on the attestation requirement.”
          “Rule 277 of the Texas Rules of Civil Procedure requires a trial court to submit
‘such instructions and definitions as shall be proper to enable the jury to render a
verdict.’” State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex. 1997) (quoting
Tex. R. Civ. P. 277)). “This rule, we have recognized, affords the trial court
considerable discretion in deciding what instructions are necessary and proper in
submitting issues to the jury.” Id. “An instruction is proper if it finds support in any
evidence of probative value and if it might be of some assistance to the jury in
answering the questions submitted.” Evans v. Allwhite, 111 S.W.3d 282, 284 (Tex.
App.—Texarkana 2003, no pet.).
          In pertinent part, the jury charge and verdict read:
QUESTION NO. 3
 
Do you find from a preponderance of the evidence that the
individual or individuals named below subscribed his or her name in his
or her own handwriting to the purported will dated March 13, 1999
while in the presence of Henry Brown at a time when he or she was
above the age of 14 years?

INSTRUCTION
 
One requirement of a valid typewritten will is that the witnesses
sign in the actual presence or conscious presence of the testator. 
Conscious presence means that Henry Brown was able to see the
witnesses to the will from his actual position at the time, or at most,
from such position as slightly altered, where he has the power readily to
make the alteration without assistance. There is no requirement that the
witness know that he or she is signing a will.
 
Answer:Yes or No
 
Melva L. CollinsAnswer: Yes 
 
Wanda WalkerAnswer: Yes 
 
Darryl K. WalkerAnswer: Yes 
 
Pamela A. YancyAnswer: Yes 

(Emphasis added.)

          George proposed the following jury question, which the trial court rejected in
writing:
QUESTION 1:
 
Do you find that Henry Brown executed the purported will dated 
March 13, 1999 with all the formalities to make it a lawful and valid
will?
 
You are instructed that all of the formalities required by law to
make a valid will are as follows:
 
1.The will must be in writing;
2.The testator must be 18 years or older;
3.The testator must personally sign the will;
4.The will must be attested by two or more credible and
disinterested witnesses above the age of 14 years who each
subscribe their names to the will in their own handwriting.
 
“Attested” means that the testator acknowledged to the witnesses that it
was his will and the witness [sic] signed it at the request of the testator,
and in the presence of the testator.
 
“Disinterested” means that a person that [sic] does not stand to benefit
from probate of the instrument as a will.
 
Answer “Yes” or “No”
 
Answer: ________________________

(Emphasis added.)
          George argues that his proffered charge was correct because Texas law requires
publication by the testator, that is, that the testator have told the witnesses that the
document that they are signing is his will. In rejecting George’s charge and charging
the jury as it did (“There is no requirement that the witness know that he or she is
signing a will.”), the trial court implicitly rejected George’s statement of Texas law.
          The Probate Code does not expressly provide that the testator publish to the
subscribing witnesses that the document that they are witnessing is his will. See Tex.
Prob. Code Ann. §§ 59, 84, 88. Only two opinions have addressed whether
publication is required, and only one of them has done so clearly. The case in which
the court clearly held that Texas law does not require publication was Davis v. Davis. 
See id., 45 S.W.2d at 241. In Davis, the trial court found that the testator did not tell
one of the attesting witnesses that the document that the witness signed was the
testator’s will and that that witness did not, in fact, know that the document that he
signed was the testator’s will. Id. In upholding the will’s probate, the Davis court
explained:
“Publication,” in relation to the making of wills, is the act of
declaring or making known to the witnesses that the testator understands
and intends the instrument subscribed by him to be his last will and
testament. Publication of a will, or the calling the attention of the
witnesses to the will, by the testator, that the instrument which they are
requested to attest is his will, is not a prerequisite to its legality unless
required by statute.
 
. . . .
 
Generally, it is not essential to the validity of a will that it should
be read over to the witnesses thereto, nor that they should know its
contents. Nor is it necessary, in jurisdictions where publication is not
required, that at the time they signed as witnesses they knew that the
instrument was the testator’s will.
 
In this state, the law, [Probate Code section 59’s predecessor],



. . . does not require the publication of a will, nor does it require that the
testator inform the attesting witnesses that the instrument to be attested
is his will. . . . Under our statute, to hold that because the testator did
not tell an attesting witness that the instrument he was signing was the
testator’s will rendered the will illegal would be to read into the statute
a prerequisite to the validity of the will that the Legislature did not
include. It would be to superadd a condition or requirement not
expressed in the law. . . . As we have stated above, under the statute of
Texas, publication of the will or knowledge of the attesting witness that
the instrument signed by him was a will are not required.

Id. (citations omitted).
          In contrast, in Keding v. Kveton, issued by our predecessor Court in 1923, we
sustained on rehearing the appellants’ contention that
while it is shown that the two persons whose names appear on the will
as witnesses did, in fact, subscribe their names to the instrument, they
did not attest the same, as required by [the predecessor to Probate Code
section 59]


 . . . as being the will of John Kveton, that is, . . . there was
no proof that they or either of them saw John Kveton sign said
instrument, or that he told them that it was his will, or that any one else
told them in the presence and hearing of John Kveton that it was his
will.

Id., 254 S.W. 612, 614 (Tex. Civ. App.—Galveston 1923, no writ) (op. on reh’g)
(emphasis added).


 Having sustained this contention, the Keding Court reversed the
judgment admitting the will to probate and remanded the cause. Id. Keding has been
interpreted not as holding that publication is required, but instead as holding that the
witnesses could not attest that the testator had signed (i.e., executed) the will:
In this connection, attention is directed to Keding v. Kveton . . . , a case
in which lack of knowledge on the part of the witnesses appeared in the
facts, but in which the decision of the court was apparently based on the
failure to prove that the signature of the testator was his, in view of the
fact that the will was not signed by him in the presence of the witnesses.
In this case it appeared that the two persons whose names were on the
will as witnesses did, in fact, subscribe their names to the instrument,
but there was no proof that they or either of them saw the testator sign
the instrument or that he told them that it was his will, or that anyone
else told them in the presence and hearing of the testator that it was his
will, and one of the witnesses testified that after he had signed the paper
he had said to the other witness that it was the first paper he had ever
signed without knowing what it was. Holding that the will was not
properly executed, the court stated that there was no evidence showing
either that the testator signed the paper offered for probate, or that his
signature was attested by two witnesses as required by law.

Wade R. Habeeb, L.L.B., Annotation, Wills: Necessity that Attesting Witness Realize
Instrument Was Intended as Will, 71 A.L.R.3d 877, 894 n.14 (1976) [hereinafter
“Habeeb”]. Thus, the Keding Court’s holding may be read simply as having been that
the will could not be proved because the witnesses could not attest that the testator
had signed the document that the witnesses signed. See Keding, 254 S.W.2d at 614 
(op. on reh’g) (explaining, “Having finally reached the conclusion that there was no
evidence that John Kveton signed the paper offered for probate, or that his signature
was attested by two witnesses as required by law, we grant the motion for rehearing
. . . .”). 
          However, another commentator, while agreeing that Keding “may be explained
as a holding that the witnesses could not attest . . . to . . . the execution of the will
because they did not see the testator sign and did not see a signature, and the testator
did not acknowledge in their presence that he had signed,” has also recognized that
“[t]he emphasis laid upon the testimony that the witnesses were not told by the
testator, or in his presence, that the instrument was a will, is significant.” See 9
Gerry Beyer, Texas Practice: Texas Law of Wills, § 18.19 (2002) [hereinafter
“Beyer”]; see also Kveton v. Keding, 286 S.W. 673, 674–75 (Tex. Civ.
App.—Galveston 1926, writ dism’d w.o.j.) (subsequent appeal in Keding case). In
sum, although Keding does not expressly hold that publication is required, it may be
read as so indicating.
          We agree with the Davis court’s holding that publication of the actual contents
of a will is not required and, thus, that a witness need not know that he or she is
signing a will; we interpret Keding as holding merely that the witnesses could not
attest to the testator’s execution of the document that they signed; and we disavow
any reading of Keding that implies that the Probate Code requires actual publication
of a will’s contents or, for that reason, that the witnesses know that they are signing
a will. There is simply no such requirement in the plain language of Probate Code
section 59. See Tex. Prob. Code Ann. § 59(a) (“Every last will and testament,
except where otherwise provided by law, shall be in writing and signed by the testator
in person or by another person for him by his direction and in his presence, and shall,
if not wholly in the handwriting of the testator, be attested by two or more credible
witnesses above the age of fourteen years who shall subscribe their names thereto in
their own handwriting in the presence of the testator.”) (emphasis added); Davis, 45
S.W.2d at 241; cf. Leeder v. Leeder, 161 S.W.2d 1112, 1114 (Tex. Civ. App.—San
Antonio 1942, writ ref’d) (in dictum, stating, “It is not necessary for the subscribing
witnesses to know the contents of the will. He is simply a witness to the signature of
the testator.”). This Court, like some of its sister courts, has held that attestation
means “the act of witnessing the performance of the statutory requirements to a valid
execution of the will.” See, e.g., Zaruba, 178 S.W.2d at 543. Those statutory
requirements do not include publication of a will’s contents or, for that reason, that
the witnesses know that they are signing a will. See Tex. Prob. Code Ann. § 59(a). 
In the absence of a requirement of publication, it is generally unnecessary that the
subscribing witnesses know that they are attesting a will. See Habeeb, 71 A.L.R.3d
at 880 (“[T]he courts have held or recognized in numerous cases that in the absence
of a statute or rule requiring publication, it is not necessary that the witnesses should
know that the instrument was intended to take effect as a will. And some cases have
applied this rule even though the lack of knowledge by the witnesses that it was a will
was due to the testator purposely misleading them. In the absence of a statute or rule
requiring publication, the courts have generally held that knowledge by the witnesses
that the instrument that they are witnessing is a will is not made necessary by . . . a
statute providing that wills should be attested and subscribed by witnesses.”)
(footnotes omitted). We decline to imply a requirement that the Legislature did not
include.



          We overrule issue one.
D.      Legal-Sufficiency Challenges
          In issue two, George argues that the evidence is legally insufficient to show
that the will copy was executed with all of the formalities and solemnities to make it
a valid will. In issue five, George argues that the evidence was legally and factually
insufficient both to establish the cause of the non-production of the original will and
to establish that the will was not revoked.
          “‘No evidence’ points may be raised by either (1) a motion for instructed
verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the
submission of the issue to the jury, (4) a motion to disregard the jury’s answer to a
vital fact issue or (5) a motion for new trial.” Cecil v. Smith, 804 S.W.2d 509, 510–11
(Tex. 1991). With the one exception noted above concerning attorney’s fees, George
did none of these things for any legal-sufficiency challenge that he raises on appeal. 
We thus hold that George waived all legal-sufficiency challenges but that concerned
with Traylor’s attorney’s fees. See id. 
          Accordingly, we overrule issues two and five in their entirety.
E.      Factual-Sufficiency Challenges
          In issue three, George argues that the evidence is factually insufficient to show
that the will copy was executed with all of the formalities and solemnities required
to make it a valid will. In issue six, George argues that the evidence is factually
insufficient both to establish the cause of the non-production of the original will and
to establish that the will was not revoked. In issue four, George asserts that the
evidence is factually insufficient to support the jury’s negative finding on his forgery
cause of action.
          1.       Standards of Review
           In reviewing a factual-sufficiency challenge to a jury finding on an issue on
which the appellant did not have the burden of proof, we consider and weigh all of
the evidence and set aside the verdict only if the evidence that supports the jury
finding is so weak as to make the verdict clearly wrong and manifestly unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Bay, Inc. v. Ramos, 139 S.W.3d 322, 329
(Tex. App.—San Antonio 2004, pet. denied). In reviewing a factual-sufficiency
challenge to a jury finding on an issue on which the appellant had the burden of
proof, the appellant must show that “the adverse finding is against the great weight
and preponderance of the evidence.” Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242
(Tex. 2001). 
 
          In either type of factual-sufficiency challenge, we must examine both the
evidence supporting and that contrary to the judgment. See id.; Plas-Tex, Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). Additionally, the jury is the sole
judge of witnesses’ credibility, and it may choose to believe one witness over another;
a reviewing court may not impose its own opinion to the contrary. See Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). 
          2.       Requirements of Valid Will
          The jury expressly found that Henry had testamentary capacity when he
executed the March 13, 1999 will, that he signed the will, that four witnesses above
the age of 14 signed the will in Henry’s presence, and that the will copy was a true
and correct copy of the March 13, 1999 will. In issue three, George argues that the
evidence is factually insufficient to show that the March 13, 1999 will was executed
with the formalities and solemnities required to make it valid because (1) the
signature on the will was not Henry’s; (2) Wanda was an incompetent witness
because she was a devisee; (3) Darryl was an incompetent witness because “he
admitted in his [much later] application for appointment as administrator that he is
an ‘interested person’”; (4) Henry did not publish the will because he never declared
to anyone on March 13 that the will was his, he did not request that anyone sign it as
a witness, and no one (allegedly including Henry) read the will or knew its contents;
(5) the will’s fourth page was not a part of the will; and (6) “[t]he contents of what
Henry . . . knowingly and voluntarily executed, if anything, are unknown” because
“suspicious circumstances abound.”
                    a.       Execution
          Because we must examine both the evidence supporting and that contrary to
the judgment in our factual-sufficiency review,


 we begin with the evidence
supporting the verdict. When viewed in the light most favorable to the verdict, the
following evidence supports the jury’s implicit finding that the March 13, 1999 will
was validly executed. Yancy testified that Henry signed the will while Wanda and
Darryl were at his home, that Henry sat at his table while the witnesses signed the
will, that each of the witnesses walked up while Henry was sitting at the table and
signed his or her name to the will in Henry’s presence, and that the witnesses were
over 14 years of age. See Tex. Prob. Code Ann. § 59(a). She further testified that
Henry signed the will, that he signed her notary log twice that day in an attempt to get
a consistent signature, and that his signatures appeared different because his lack of
several fingers made his signatures “chicken scratchy.” See id. Traylor confirmed
that, although Henry was missing fingers, he could still hold a pencil with his hand
to write his initials; that his signature was inconsistent because of his illnesses; and
that the signature on the will copy was Henry’s. She also testified, “I don’t really
know anything about his hands getting stiff as a board because,” even after 1998, “he
did a good job of putting his self [sic] up on the bed” by using “that hand to pull
himself up.” The record also contains examples of Henry’s signature, made after
March 1999, from other contexts—from which evidence a rational jury could
conclude that Henry could sign his name in March 1999. Yancy testified that, on
March 13, 1999, Henry was over 18 years of age, was of sound mind, knew what he
was doing and what he was signing, knew who Wanda and Darryl were, and knew
what his property was and how much he had and that nothing would have led her to
believe that Henry did not know what he was doing that day. Darryl confirmed that
Henry was of sound mind when they came to sign a document at his home, that Darryl
and Wanda signed the document (which was Henry’s will) at Henry’s request and in
front of Henry while he was seated at the table, and that he and Wanda were over 14
years old. Collins also signed the will at the table at which Henry was seated. 
Traylor had no doubts that Henry executed the March 13, 1999 will. This evidence
supports the jury’s finding that Henry signed the will, that the four individuals whom
the jury found were witnesses each signed the will in his presence, that Henry and the
witnesses were the requisite age at the time of the will’s signing, and that Henry was
of sound mind and knew what property he had on March 13, 1999. See id. §§ 59(a),
84(b), 85, 88(b)(1)–(2).
 
          In support of his factual-sufficiency challenge, George relies on the following
evidence that does not support the jury’s verdict: there was evidence that the
signature on the will copy did not look like Henry’s, that he had not physically been
able to sign his name since before 1999, and that his hands were stiff as boards. We
hold that this evidence does not render the evidence supporting the complained-of
findings so weak as to be clearly wrong or manifestly unjust. See Cain, 709 S.W.2d
at 176.
                    b.       Henry’s Knowledge of the Will’s Contents
          We begin our factual-sufficiency review with the following evidence, which
supports an implicit finding that Henry knew the will’s contents before he signed it.


 
See Plas-Tex, Inc., 772 S.W.2d at 445. Yancy testified that she crossed out the “J.”
in Henry’s name and changed the page number while Henry was sitting at the table
and before he or the witnesses signed the will, from which can reasonably be inferred
that Henry saw those changes being made. Yancy also testified that Henry had asked
her to draft the will in 1999 and generally told her what substantive provisions he
wanted in it; that the only article that she changed after Henry’s initial review of the
draft will, and at his direction, was clause IV, which concerned the care of his wife;
that she gave Henry a copy of the final version of the will, with clause IV’s alteration
and consisting of five pages, before the day of the signing; and that he was the one
who pointed out to her on the day of the signing that his middle initial was not “J.” 
This evidence supports that Henry read the will, that the will consisted of five pages
when he read it, and that Henry knew its contents.
          In support of his factual-sufficiency challenge, George relies on the following
evidence that does not support the complained-of finding. First, the will copy’s last
two pages undisputedly differed in font from that of the first three pages, and the last
two pages contained no definite references to the preceding three pages. Second,
Henry’s signature or initials did not appear on any page with testamentary
dispositions. Third, Yancy’s testimony about the number of pages in the will that she
gave to Henry to review was contradictory. Fourth, the last page of the will copy
appears to have the number “5” written over the number “2” in the space provided for
the will’s number of pages, and Yancy’s initials appear beside the change. We have
reviewed this evidence and the entire record, and we cannot say that the evidence
supporting the complained-of jury finding is so weak as to make the finding clearly
wrong and manifestly unjust. See Cain, 709 S.W.2d at 176. As for Yancy’s
credibility and the weight to be given the circumstances that George claims were
suspicious, we note that these matters were generally for the jury. See Jackson, 116
S.W.3d at 761. 
 
                    c.       Number of Pages
          We start our factual-sufficiency review with the following evidence, which
supports the jury’s implicit finding that the March 13, 1999 will consisted of five
pages and its express finding that the will copy was a true and correct copy of the
will. See Plas-Tex, Inc., 772 S.W.2d at 445. Yancy testified that the will copy, a
five-page document that was admitted into evidence, was a correct copy of the actual
will that Henry had signed on March 13, 1999. See Tex. Prob. Code Ann. § 84
(requiring that “the contents of such will [that is not produced in court] . . . be
substantially proved by the testimony of a credible witness who has read it or heard
it read.”). This evidence supports the jury’s express finding that the will copy, which
consisted of five pages, was a true and correct copy of the March 13, 1999 will.
          George relies on the same evidence, set out in the immediately preceding
section, that does not support the jury’s complained-of finding. We have already
discussed why that evidence does not render the evidence supporting the complained-of jury findings so weak as to make them clearly wrong and manifestly unjust. See
Cain, 709 S.W.2d at 176.
                    d.       Publication
          We also reject George’s factual-sufficiency challenge based on lack of
publication. First, we have already held that Texas law does not require the testator
to publish the will to the witnesses. See Davis, 45 S.W.2d at 241. Therefore, it was
immaterial that Collins did not read the will, or that Henry did not speak to her about
it, before she signed the will. See Leeder, 161 S.W.2d at 1114 (“It is not necessary
for the subscribing witnesses to know the contents of the will. He is simply a witness
to the signature of the testator.”); Davis, 45 S.W.2d at 241 (“Generally, it is not
essential to the validity of a will that it should be read over to the witnesses thereto,
nor that they should know its contents.”); Warren v. Ellis, 137 S.W. 1182, 1187 (Tex.
Civ. App.—Galveston 1911, no writ) (“The statute does not require that the witness
shall sign at the request of the testator, but if that were required we think that it might
be inferred” under facts of that case, which indicated an implicit request). Neither
was it material that Darryl did not know when he entered Henry’s house that he was
going to sign a will or that he did not know what he signed or on what day he signed
it. See Davis, 45 S.W.2d at 241 (“In this state, the law . . . does not require . . . that
the testator inform the attesting witnesses that the instrument to be attested is his will. 
. . . [P]ublication of the will or knowledge of the attesting witness that the instrument
signed by him was a will are not required.”). Moreover, Darryl testified that, when
he went into Henry’s home, Henry said, “I just need you to come with your mom and
sign.” See Davis, 45 S.W.2d at 241.
          Second, even if the statute could somehow be read to require that the witnesses
know that they are signing a will (i.e., to require publication), the following evidence
supports that that requirement was satisfied with respect to Yancy, Collins, and
Wanda. Yancy drafted the will, and she testified that Henry contacted her and asked
her to come to his home so that he could sign the will. As for Collins, she testified
that she signed what she believed was a will; that she signed the will at the table at
which Henry was also sitting; that Yancy, her friend, had asked her to sign; and that
Collins knew what she was there for that day. Collins also saw Henry and Yancy
speaking before Collins signed, although she could not hear what they said. The
testator’s request that one sign his will as a witness may be implicit.


 As for Wanda,
Henry told Yancy that he wanted her to witness the will because Wanda was to be the
executor and because he trusted her. Yancy testified that she “ma[d]e plans” to get
the witnesses to the will signing, although she also said that Henry was the one who
did so. In any event, Wanda had a conversation with Henry at his house on March
13, 1999, although Yancy did not overhear that conversation, and, according to
Yancy, it would be fair to say that Wanda knew that she was there that day to sign a
will and that Wanda “knew that she was executor and a beneficiary” under Henry’s
will. Additionally, as set out above, Darryl testified that Henry told them that day that
“I just need you to come with your mom and sign.”
          George offers no record references to evidence the contrary, only general
statements that “Henry Brown never declared to anybody on that date that the will
copy was his will” and that he “did not request that anybody sign the will as an
attesting witness.” Collins gave conflicting testimony as to whether she knew that
what she signed was a will, but credibility issues are generally for the jury. See
Jackson, 116 S.W.3d at 761. Having reviewed the entire record, we cannot say that,
even if publication were required, the evidence supporting an implicit finding of
publication would have been so weak as to have rendered that implicit finding clearly
wrong and manifestly unjust. See Cain, 709 S.W.2d at 176.
                    e.       Witness Credibility
          We also reject George’s factual-sufficiency challenges based on the
competency of the subscribing witnesses. A “credible” witness is a competent
witness. Triestman, 838 S.W.2d at 547. “A competent witness to a will is one who
receives no pecuniary benefit under its terms.” Id. The following evidence supports
the jury’s finding that the will was properly witnessed. The jury expressly found that
Yancy was a witness. Yancy testified that she signed the will as a notary and that she
was a witness and that Henry was of sound mind, knew what he was doing and what
he was signing, and knew what his property was and how much he had on the day that
he executed the will. She also testified that Henry instructed her on how to draft the
will’s substance and to matters indicating that she understood that Henry had
reviewed the will before signing it. She signed after an attestation clause that recited,
among other things, that Henry had personally appeared before her and that he had
declared to the witnesses that the instrument was his will. She was not a beneficiary
under the terms of the will. A notary may be considered, and can be competent to be,
a subscribing witness to a will.


 Neither was Darryl an incompetent witness for the
reason that George argues on appeal, which was that Darryl alleged in January 2005,
in his application for his appointment as administrator, that he “[wa]s a person
interested” in the estate. Whether a witness is credible, as required by section 59(a),
is ascertained at the time of the witness’s signing the will. Cf. id. (providing, “A
competent witness to a will is one who receives no pecuniary benefit under its
terms[,]” and “The will itself constitutes some evidence that the witnesses were
credible to attest the will at the time the will was executed.”) (emphasis added). Later
events cannot affect the witness’s status as a competent witness, at the relevant time,
to the will’s execution. Accordingly, even assuming without deciding that Darryl’s
January 2005 allegation could somehow prevent his being a credible witness if he had
witnessed a will after January 2005, that 2005 allegation could not affect his
credibility to sign a will in 1999. Darryl was not a beneficiary under the March 13,
1999 will, and George points to nothing else in the trial record showing that Darryl
was not a credible witness when he signed the will.


 Cf. id. (“The will provides no
pecuniary benefit to either witness. The will itself constitutes some evidence that the
witnesses were credible to attest the will at the time the will was executed.”).
 
 
          In contrast, it is undisputed that Wanda was not a credible witness at the time
that she signed the will—not for having been named executor,


 but for having been
a devisee. See id. However, Wanda’s testimony was not required to establish
Henry’s will:


 Yancy’s testimony alone sufficed to do so, which itself was
corroborated by testimony of various other witnesses. See Tex. Prob. Code Ann.
§§ 84(b)(1), 85. Moreover, the Probate Code requires that only two credible
witnesses attest the will, and we have already held that the three other
witnesses—Darryl, Yancy, and Collins—were competent to do so. See id. § 59(a).
Therefore, the will would not fail if Wanda were considered an incompetent witness. 
See id.
                    f.       Conclusion
          We have reviewed the entire record, and we cannot say that the evidence
supporting the complained-of jury findings is so weak as to have rendered the
complained-of findings clearly wrong and manifestly unjust. See Cain, 709 S.W.2d
at 176. As for witness credibility and the weight to be given witnesses’ testimony,
these matters were for the jury. See Jackson, 116 S.W.3d at 761.
          We overrule issue three in its entirety.
          3.       Non-Production
          In part of issue six, George argues that the evidence is factually insufficient to
establish satisfactorily the cause of Traylor’s non-production of the will.
          Because we must examine both the evidence supporting and that contrary to
the judgment, our factual-sufficiency analysis begins with evidence supporting the
implicit finding that Traylor satisfactorily demonstrated the reason for her not having
produced the original will. See Plas-Tex, Inc., 772 S.W.2d at 445. Yancy testified
that she left the original will with Henry on March 13, 1999 and that she did not have
access to the original will afterwards. She also testified that she saw the original will
on April 16, 2001, after Henry’s death, in George’s possession and that that was the
first time since March 13, 1999 that she had seen the original will. According to
Yancy, the will that George had that day had the original signatures and notary seal. 
Traylor confirmed that George retrieved the will from Henry’s house on April 16,
2001. George’s counsel admitted into evidence an affidavit, by Robert Anderson,
attesting that (1) Henry gave him his will, asking Anderson to give the will to George
upon Henry’s death, and (2) Anderson gave the will to George after Henry’s death. 
Traylor confirmed Anderson’s affidavit testimony, based on what Anderson had told
her, except adding that Henry gave Anderson the will in an envelope. George also
admitted that he was the only person who had the keys to Henry’s house and to the
burglar bars on it and that the burglar bars were locked after Henry died. In fact,
George admitted retrieving Henry’s pre-need funeral plan papers from a box on
Henry’s bedside table soon after Henry’s death. This evidence supports the implicit
finding that Traylor satisfactorily proved why she had not produced the March 13,
1999 will—that is, that George, not she, last had the original will in his possession. 
See Tex. Prob. Code Ann. § 85 (requiring that “the cause of [the written will’s]
non-production . . . be proved” and that “such cause . . . be sufficient to satisfy the
court that it cannot by any reasonable diligence be produced . . . .”).
          In response, George articulates the following five arguments in support of his
factual-sufficiency challenge. First, he argues that the above evidence is factually
insufficient because “Yancy failed to articulate any visually identifiable
characteristics of the alleged original as the basis for her opinion.” However, Yancy’s
testimony that she observed the original signatures and notary seal on the document
that George had on April 16 is some evidence to the contrary. Moreover, whether she
was a credible witness on this subject, and what weight to give her testimony, were
matters for the jury to resolve and do not make the evidence factually insufficient. 
See Jackson, 116 S.W.3d at 761. 
          Second, George argues that “Yancy is incompetent to testify about ink or other
markings on paper” and so to testify about whether she saw the original will in
George’s possession on April 16. We seriously doubt that only an expert may testify
to the originality of a document when, as here, the lay person who testified to the
document’s originality was the very one who created the document and observed its
signing. Nonetheless, even if George were correct, he does not direct us to any place
in the record that he objected to Yancy’s testimony on the basis that only expert
testimony could prove originality; accordingly, his challenge is waived. See Tex. R.
App. P. 33.1(a)(1). 
          Third, George argues that Anderson’s affidavit testimony that Henry gave him
a “will” is “an unsubstantiated legal conclusion that Anderson himself contradicted
when he told Traylor that he did not know what was in the envelope” that Henry had
given him. Whether Anderson knew that the document that Henry gave him was a
will was a contradicted factual matter—Anderson’s affidavit showed an
understanding that the document was a will, while Traylor’s testimony relating what
Anderson had told her indicated that Anderson did not know that—for the jury to
resolve. See Jackson, 116 S.W.3d at 761. 
          Fourth, George argues that Traylor judicially admitted that “George Brown
never possessed an original of the will copy” because she testified that George’s
Exhibit eight, which was undisputedly a copy of the will, was what George had had
in his possession on April 16, 2001. However, “‘[a] judicial admission must be a
clear, deliberate, and unequivocal statement’ . . . .” Horizon/CMS Healthcare Corp.
v. Auld, 34 S.W.3d 887, 905 (Tex. 2000) (quoting Regency Advantage Ltd. P’ship v.
Bingo Idea–Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996)). Traylor’s was not
such a statement. She testified: 
Q:Do you recognize [George’s Exhibit eight]?
 
A:Yes.
 
Q:When was the first time you saw it?
 
. . .
 
A:At George’s—at Henry Brown’s house.
 
. . .
 
Q:Are you sure this is what you saw?
 
A:Right.
 
Q:With the little brown stain on it?
 
A:Yes.
 
Q:Does this look like an original to you?
 
A:Right.

          This is not a clear and unequivocal statement that George was not the last
person to possess the original will. Rather, it is a statement that Traylor thought that
that exhibit was an original. Moreover, Traylor testified both that she was “sure” that
Exhibit eight was the actual document that George held and that the exhibit “look[ed]
like an original” to her. Given her statement that the exhibit “look[ed] like” an
original, when it undisputedly was not, her further testimony that she was sure that
Exhibit eight was what George had possessed on April 16 was not a clear and
unequivocal statement that he had possessed only a copy of the will on that date.
          Fifth, George argues that the evidence is factually insufficient because (1)
Yancy’s testimony was contradictory and speculative and (2) Anderson’s affidavit
testimony was incredulous and based on surmise and conjecture. The jury was
entitled to determine the weight to give the conflicting testimony and to determine
which witnesses were credible. See Jackson, 116 S.W.3d at 761. The jury’s
resolution of those issues does not, on this record, make the evidence supporting the
complained-of jury findings so weak as to render those findings clearly wrong and
manifestly unjust. See Cain, 709 S.W.2d at 176.
          We have reviewed the entire record in the light required for a factual-sufficiency review, and we conclude that the evidence supporting the complained-of
implicit finding is not so weak as to render that finding clearly wrong and manifestly
unjust. See Cain, 709 S.W.2d at 176. We thus hold that the evidence is factually
sufficient to establish satisfactorily the cause of Traylor’s non-production of the
March 13, 1999 will. See Tex. Prob. Code Ann. § 85. 
          We overrule this portion of issue six.
          4.       Non-Revocation
          The jury expressly found that Henry did not revoke the March 13, 1999 will. 
In the remainder of issue six, George argues that the evidence was factually
insufficient to support the jury’s express finding that Henry did not revoke the March
13, 1999 will. Because we must examine both the evidence supporting and that
contrary to the judgment, we begin with the evidence supporting the judgment. See
Plas-Tex, Inc., 772 S.W.2d at 445. Yancy testified that, to her knowledge, Henry
never revoked the March 13, 1999 will by tearing or destroying it after its execution. 
See In re Estate of Capps, 154 S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no
pet.) (“The testimony of a witness that, to her knowledge or belief, the testator did not
revoke the will has been held sufficient evidence of nonrevocation to support probate
of the will.”). Traylor opined that she did not feel that Henry would ever change the
March 13, 1999 will because “usually whatever Mr. Brown said, Mr. Brown did.” 
Moreover, Yancy testified that she saw the original will in George’s possession
within days of Henry’s death, and Anderson’s affidavit and Traylor’s testimony
indicated that Anderson gave the will to George—all of which testimony supports the
jury’s finding that Henry did not destroy the March 13, 1999 will and that, instead,
George destroyed it. See Tex. Prob. Code Ann. § 63 (Vernon 2003) (“No will in
writing, and no clause thereof or devise therein, shall be revoked, except by a
subsequent will, codicil, or declaration in writing, executed with like formalities, or
by the testator destroying or canceling the same, or causing it to be done in his
presence.”) (emphasis added); In re Capps, 154 S.W.3d at 245 (“True, an original
will’s absence [when last seen in testator’s possession] creates a rebuttable
presumption of revocation; but that presumption can be overcome by proof and
circumstances contrary to the presumption or that it was fraudulently destroyed by
some other person.”).
          George first responds that Traylor “failed to trace an original of the will copy
to the hands of any other person” besides Henry, with whom she left it on March 13,
1999. However, the evidence was disputed as to whether the original will was last
in the hands of George. The evidence supporting that George last possessed the
original will was not so weak as to make the jury’s finding clearly wrong or
manifestly unjust. George next argues that “there are no circumstances contrary to
the presumption of revocation in this case.” The immediately preceding paragraph,
however, outlines such evidence. Finally, George argues that Traylor’s and Yancy’s
testimony that they did not forge the will “is self-serving, and of ‘no material
significance,’ in rebutting the presumption that the will copy was revoked.” Even if
George were somehow correct that Yancy’s and Traylor’s denial of forgery was
incompetent evidence, Yancy also testified that she saw the original will in George’s
hands within days of Henry’s death, and Anderson averred that Henry had given him
the will to give to George and that Anderson gave the will to George. Although
George controverted that evidence in various ways, the resolution of that evidentiary
conflict involved, in large part, a determination of witness credibility, which was the
jury’s province. See Jackson, 116 S.W.3d at 761.
          George also relies on the following evidence or arguments: (1) Henry tried to
execute a different will on his deathbed; (2) Henry did not mention the March 13,
1999 will to anyone but Yancy;


 and (3) Yancy’s, Anderson’s, and Traylor’s
testimony was contradictory or incredible. These matters of witness credibility were
properly left to the jury. See id. Moreover, we have reviewed the entire record in the
light required for a factual-sufficiency review, and we cannot say, even in light of the
evidence on which George relies, that the evidence supporting the complained-of jury
finding is so weak as to render that finding clearly wrong and manifestly unjust. See
Cain, 709 S.W.2d at 176. We thus hold that the evidence is factually sufficient to
support the jury’s finding that the March 13, 1999 will was not revoked. See Tex.
Prob. Code Ann. § 88(b)(3). 
          We overrule the remainder of issue six.
          5.       Forgery
          The jury expressly found that the will copy was not forged. In issue four,
George asserts that the evidence is factually insufficient to support the jury’s negative
finding on his forgery cause of action. Because we must examine both the evidence
supporting and that contrary to the judgment, we begin with the evidence supporting
the judgment. See Plas-Tex, Inc., 772 S.W.2d at 445. Yancy denied having forged
Henry’s name on the March 13, 1999 will. This testimony, as well as the evidence
outlined in our earlier discussions, supports the jury’s finding that the March 13, 1999
will was not forged.
          George relies on the following to show that the jury’s adverse finding on
forgery was against the great weight and preponderance of the evidence. First, he
argues that “the lack of evidence that anybody ever made a copy it [sic] indicates that
somebody forged the will copy, especially in this case where Henry Brown depended
so heavily on others for assistance.” However, both parties introduced a copy of the
document that Traylor alleged to be the March 13, 1999 will, and the jury found that
that copy was a true and correct copy of the will: there was thus not a “lack of
evidence” that the will was copied. In any event, even if a copy of the will had not
been made, the jury could have interpreted that fact to mean that Henry simply had
not had the will copied, not that the will had been forged. Second, George argues that
“Yancy gave clear, direct and positive testimony that she added an unidentified page,
and that the only change to the [1999] will copy that Henry Brown knew about or
consented to was Yancy [sic] correcting the spelling of his name. This is direct
evidence that Henry Brown did not know about or consent to Yancy’s page
substitution(s).” However, we have already outlined Yancy’s testimony that, albeit
at times conflicting, indicated that she made the page change in Henry’s presence and
before he signed the will and that Henry had all five pages of the will to review before
he signed. Accordingly, it is simply incorrect to imply that she gave uncontradicted
testimony that Henry did not approve or know of the page changes; furthermore,
because her testimony on this point was somewhat conflicting, it was the jury’s
province to resolve her credibility on this matter as it did.
          We have reviewed the entire record in the light required for a factual-sufficiency review, and we cannot say that the jury’s negative finding on forgery is
against the great weight and preponderance of the evidence. See Francis, 46 S.W.3d
at 242. We thus hold that the evidence is factually sufficient to support the jury’s
finding that the March 13, 1999 will was not forged. 
          We overrule issue four.
Appointment of Substitute Dependent Administrator
          On February 25, 2005, just over two months after the final judgment from
which George appealed, the trial court granted Darryl’s application to remove Traylor
as dependent administrator of Henry’s estate and to appoint himself in her place. In
issue eight, George argues that the trial court erred in appointing Darryl as dependent
administrator. 
          We lack jurisdiction over this challenge. George filed his notice of appeal on
October 12, 2004 from the original final judgment, and his supplemental notice of
appeal on December 2, 2004 from the amended final judgment. Assuming that the
complained-of order appointing Darryl as successor dependent administrator is
appealable,


 the record contains no notice of appeal from it. We have no subject-matter jurisdiction, in this appeal, to consider a totally independent, appealable order
from which no appeal has been perfected. See Tex. R. App. P. 25.1(b) (“The filing
of a notice of appeal by any party invokes the appellate court’s jurisdiction over all
parties to the trial court’s judgment or order appealed from.”) (emphasis added); Tex.
R. App. P. 25.1(d)(2) (“The notice of appeal must: . . . state the date of the judgment
or order appealed from . . . .”); see also Velasquez v. Harrison, 934 S.W.2d 767, 770
(Tex. App.—Houston [1st Dist.] 1996, no writ) (holding that appellate court lacks
jurisdiction to consider appeal that is untimely perfected).
          Consequently, we do not consider issue eight.
Conclusion
          We reverse that portion of the judgment of the trial court that awarded
attorney’s fees to Traylor. We affirm the judgment in all other respects. We remand
the cause for the consideration of the amount of reasonable and necessary attorney’s
fees that Traylor incurred in pursuing the probate of the March 13, 1999 will.


 See
Tex. R. App. P. 44.1(b). This is a limited remand. See Hudson v. Wakefield, 711
S.W.2d 628, 630 (Tex. 1986); Hansen v. Acad. Corp., 961 S.W.2d 329, 331 (Tex.
App.—Houston [1st Dist.] 1997, pet. denied).

          George’s motion to supplement his brief with an additional issue is denied.


 
His accompanying motion to take judicial notice is denied as moot.
 
 
Tim Taft
Justice
Panel consists of Justices Taft, Higley, and Bland.